THE SECURITY COMPANY, ADMINISTRATOR, *vs.* LIZZIE G. BRYANT.

A widow, to whom a bequest is given in lieu of dower, which she elects to accept, is regarded as taking as a purchaser, and therefore the bequest is not liable to abate *pro rata* with other legacies, unless it is so provided in the will.

A testator by his will gave his widow $50,000 in lieu of dower, an adopted daughter $25,000, and eleven other legatees $21,000, making $96,000 in all. He then provided that if his estate should prove insufficient to pay all the bequests in full, the bequests to his widow and adopted daughter should be paid first and in full and the others *pro rata*. The estate amounted to only $48,000. Held that the widow was entitled to full payment of her legacy before that of the adopted daughter, and · that they were not to be reduced *pro rata*.

[Argued November 20th, 1884—decided February 26th, 1885.]

SUIT for advice as to the construction of a will, brought to the Superior Court in Hartford County by the plaintiff, which was administrator *de bonis non* with the will annexed; heard before *Stoddard, J.* The following facts were found by the court:—

Gardner P. Barber, late of Hartford, died on the 8th day of October, 1879, possessed of a considerable estate, both real and personal. On the 22d day of May, 1875, he executed a will dated on that day, which was in due form of law to pass both real and personal estate, and of which the following are the portions material to the present case :

"3. I give, devise and bequeath unto my beloved wife, Abby H. Barber, to her and her heirs for ever, the sum of fifty thousand dollars, the same to be in lieu of dower.

"4. I give, devise and bequeath unto my beloved wife, Abby H. Barber, the sum of twenty-five thousand dollars,

in trust for my beloved daughter, Lizzie G. Barber, the use, income and improvement of which is to be paid over to her for her sole and separate use, and free from any control of her husband, for and during the period of her natural life; and upon her death, the same principal sum of twenty-five thousand dollars is to be paid to her child or children if she should leave any surviving, but if she should die leaving no child or children, then I direct that out of said principal sum of twenty-five thousand dollars, so held in trust, the sum of five thousand dollars shall be paid over to the husband of the said Lizzie G. Barber, if he shall be living at her decease, otherwise the whole of said principal sum of twenty-five thousand dollars I give, devise and bequeath unto my beloved wife, Abby H. Barber, to her and her heirs forever. But if in the opinion of said Abby H. Barber, trustee, a greater sum should be paid over to the said Lizzie G. Barber than the use, income and improvement of the said principal sum of twenty-five thousand dollars, so held in trust for her, I hereby authorize and direct said Abby H. Barber, trustee, to pay over to the said Lizzie G. Barber, from said principal sum of twenty-five thousand dollars, such sums and at such times as shall seem to her just, reasonable and proper, and if in the proper exercise of the discretion hereby given to the said Abby H. Barber, trustee, she shall pay over to the said Lizzie G. Barber the entire amount of said sum of twenty-five thousand dollars, then the devise to the husband of the said Lizzie G. Barber, and to Abby H. Barber as aforesaid, of the remainder of the principal sum of twenty-five thousand dollars, shall be void."

There then follow nine clauses containing legacies to sundry persons, amounting in the whole to $21,000; next a residuary legacy to the widow; and finally the following clause:—

"15. I hereby make, constitute and appoint my beloved wife, Abby H. Barber, and Caleb M. Holbrook, to be executors of this my last will and testament, and I hereby direct my said executors that if my said estate shall not be

sufficient to pay in full the aforesaid legacies, then the devise to my beloved wife, Abby H. Barber, and to Abby H. Barber in trust for Lizzie G. Barber, shall be paid first and in full, and the other devises *pro rata.*

After his decease the will was duly admitted to probate on the 29th of October, 1879. Caleb M. Holbrook and Mrs. Barber, the executors, qualified as such, but afterwards, in 1882, resigned their trust, and the Security Company, a corporation located in Hartford and empowered by its charter to take such trusts, was appointed administrator with the will annexed on the estate, and accepted the trust.

On June 12th, 1882, Mrs. Barber died, leaving a will which was executed during her last sickness. The estate disposed of by her in her will was all derived from and under the will of her husband, except fifty-six shares of the capital stock of the Phœnix Insurance Company, of the par value of $5,600, given to George A. Holbrook, her brother, which, however, was subject to a lien for $2,520, which has been paid off by her executor.

Mrs. Barber never declined to accept the provisions of the will of her husband made in her favor in lieu of her right of dower in the estate.

The said Lizzie G. Barber, whose present name is Lizzie G. Bryant, was not the daughter of Gardner P. and Abby H. Barber, or of either of them, and was not related to either of them, but in her infancy had been received by them into their family as a daughter, though never legally adopted. Mr. and Mrs. Barber were married on the 24th of October, 1848. They never had any children of their own.

The devisees and legatees under Mrs. Barber's will and the said Lizzie G. Bryant and her husband were made defendants, and the controversy in the case was between them.

At the time of Mr. Barber's death his estate consisted of a homestead, which was then worth and inventoried at the sum of $25,000, but which was subject to a mortgage for

$5,000; other real estate situated in Saybrook, valued at $100; furniture and household goods, which in his will are specifically bequeathed to his wife, inventoried at $1,205; and other personal estate inventoried at $48,277. This latter item included an interest in a partnership, and also comprised an interest of forty-two hundredths of an equity of redemption in certain real estate which had been purchased with partnership funds for the purpose of enabling the partnership to carry on upon it its mercantile and manufacturing business, but the title thereto had been taken and held in the joint names of the individuals who composed the partnership. This interest in the last mentioned real estate, at the time of Mr. Barber's death, was estimated at about $10,000, but the exact value of the same at this time is uncertain, but is much less than the above estimate. Mr. Barber, neither at the time of the execution of his will, nor subsequently, owned any other real estate.

The assets of the estate at this time do not exceed in value the sum of $48,000, comprising the equity in the homestead, the interest in the real estate above described, the lot at Saybrook, the furniture, specifically given to Mrs. Barber, and other personal estate amounting to about $26,000.

On the trial the counsel for Lizzie G. Bryant offered testimony to prove the following facts:—She was born on the 18th of November, 1854, and on the 30th of November, 1857, being then an orphan, was taken by Mr. and Mrs. Barber into their family, as and for their own child, but without any adoption by legal proceedings, there being at that time no statute law in this state providing for the adoption of children. They gave her their name, and duly entered her name, the date of her birth, and the words "adopted Nov. 30th, 1857," upon the family records. Thereafter she lived with them, down to the time of the death of both Mr. and Mrs. Barber, and they always spoke of and treated her as their own child. She was married to Henry Bryant on the 17th day of November, 1875; and thereafter they resided with Mr. and Mrs. Barber down to the time of

their death, at Mrs. Barber's urgent request; and, to the time of his death, Mr. Barber always loved her with as much affection as if she had been his own child. But upon objection made by counsel for the other defendants, the court refused to admit the evidence.

The counsel for the said Lizzie G. Bryant also offered to prove by the testimony of Mr. J. H. White, the judge of the probate court of the district of Hartford, the following facts: —Some time after the estate of Mr. Barber came into the probate court, within six or eight months, according to the best belief of the witness, Mrs. Barber went to his office to ask advice about Mr. Barber's will. Judge White said to her that his opinion was that, in case of a deficiency of assets, the two legacies to Mrs. Barber and Mrs. Bryant would abate *pro rata*. He did not examine the question at the time. He thinks he told her it was an opinion without investigation and given only after reading the will. But, upon objection thereto raised by counsel for the other defendants, the court refused to admit the evidence.

Upon these facts the court rendered judgment that the legacy to the widow, Abby H. Barber, of $50,000, should be paid first and in preference to all other legacies, and in no event should be abated on account of any other legacy.

The defendant Lizzie G. Bryant appealed to this court.

*H. C. Robinson* and *C. E. Gross*, for the appellant.

1. In the absence of all proof to the contrary, the testator will be deemed to have acted in good faith, upon the belief that his estate would be sufficient to answer the purposes to which he devoted it. *Towle* v. *Swasey*, 106 Mass., 104. The first intention of the testator, then, as apparent from the will itself, is that his wife should receive out of his estate, which he expected to be sufficient to pay all his legacies, the furniture and $50,000 and *no more by way of dower*, the daughter the benefit of $25,000, and the brothers, sisters and other relatives $21,000. In this view the words "in lieu of dower" as used in the third clause, are words of limitation.

2. In case of a deficiency of assets *and in the absence of an express direction* a legacy given in lieu of dower by general rule does not abate, but this rule is but a generalization of intention, and, like all other rules for the construction of wills, yields to a paramount intention of the testator. In all these features there is no distinction between a gift in lieu of dower and a specific gift. We do not question in the least the rule laid down by a majority of the court in *Lord* v. *Lord*, 23 Conn., 327, who held, in opposition to the views of the minority, that the distinction between our law of dower and the English law upon the same subject was not sufficient to destroy the idea of purchase in a gift in lieu of dower. The rule is that a legacy given in lieu of dower, and with no qualifying words, is a purchase, and not a mere gift; and in the absence of directions by the testator is not required to contribute or abate, in case of a deficiency of assets. There is no rule of law that prevents the testator from qualifying or limiting what would be, in the absence of such qualifying words, the legal effect of a legacy in lieu of dower. The question is purely one of intent, and this intent may be gathered from the whole will. The gift "in lieu of dower" may be a purchase, but the purchase price named may be upon certain conditions, with certain limitations. These conditions and limitations may be so wrapped up in the other clauses of the will that a court may have to decide as to the testator's intention, but they are none the less effective or legal, when found and defined "according to the intention of. the testator." *Towle* v. *Swasey*, 106 Mass., 100, 105; *Richardson* v. *Hall*, 124 id., 229, 232; *Warren* v. *Morris*, 4 Del. Ch., 303; *Roper* v. *Roper*, L. Reps., 3 Chan. Div., 714. We claim that in the fifteenth clause of Mr. Barber's will there is an express direction consistent with the intention of the testator as manifested in the whole will, as to the manner in which a possible deficiency of. assets shall be borne; and that this express direction reaches to and embraces the gift to his wife in lieu of dower.

3. A gift in lieu of dower, without any conditions or

qualifications, means priority of payment, a meaning which the testator is presumed to have known and understood as he used the term. When, therefore, he came to provide, in the fifteenth clause, for a deficiency of assets, and an apportionment among the legacies, why did he include the general legacy to his wife, knowing that the law alone gave it priority? "The expression 'the within named legacies,' then, as used in the clause of the will disposing of the surplus, clearly includes the bequest of the widow, and the language of that clause makes that bequest, equally with others, subject to abatement in case of deficiency to pay the whole, and entitled to its proportionate increase in case of a surplus." *Orton* v. *Orton*, 3 Abbott's Court of Appeals Dec., 415. The will, in the last case, provided that if the estate should not be sufficient to pay the amount of the within named legacies, the deficit should be deducted therefrom in proportion to the sums given to each. A provision that, if the estate should be insufficient to pay the legacies hereinbefore named, they should abate *pro rata*, includes all the legacies and one given in lieu of dower. *Tickel* v. *Quinn*, 1 Demarest, 425. Now we find in the fifteenth clause this provision:—" If my said estate shall not be sufficient to pay in full *the aforesaid legacies*," (this certainly includes the one in lieu of dower), "then the *devise* to my wife Abby H. Barber and to Abby H. Barber in trust for Lizzie G. Barber, shall be paid first and in full." The priority of the gift to the wife, which otherwise would have prevailed over the daughter's, is thus *intentionally extinguished*. Here the two gifts are married and must henceforth go *pari passu*. Each provision in a will must be read as subject to all the modifications expressed in the other clauses of the same will. And this rule of construction the law writes in with every legacy. The third clause must be thus read:—" I give to my wife Abby H. Barber the sum of $50,000, the same to be in lieu of dower, but if my estate shall not be sufficient to pay this and the following legacies in full, then I direct that this and the next following legacy for the benefit of my daughter shall first be paid in full." Both

these legacies, or rather the collective one, must now be *first* paid; neither has priority.

4. But it is claimed that the gift is a purchase, and cannot be impaired by any such construction. A clause in a will containing a gift in lieu of dower is merely a proposition made by the husband to his wife, offering a price for her legal right of dower. Scribner on Dower, p. 527. It does not become a purchase until she has accepted the offer. This offer, as to price, may be conditional or changeable with the changing circumstances of the testator. A testator can very properly say—" Believing myself to be worth $100,000, I give my wife $50,000 in lieu of dower, but if I leave only $48,000, then I give her $32,000 in lieu of dower." This, of course, can be said in two or more clauses, as well as in one. Such a construction is certainly an equitable one. One half a man's property may properly be given as the purchase price of his wife's dower, but it will require the clearest proof to show that the testator intended to give to his wife *the whole* of his property as the *price of her dower*, and *at the cost of disinheritance to a child*. It is claimed that the fifteenth clause does not *necessarily* show that the testator anticipated so great a deficiency of assets as to require any abatement in the daughter's legacy. We claim that it does in unmistakeable language. Certainly it is apparent that the testator did not intend to leave his daughter penniless. A negative intention will be executed by a court as well as a positive one. This court so declared in a case as to dower in *Goodwin* v. *Goodwin*, 33 Conn., 319. A gift in lieu of dower is not so sacred but that it is subject to the same rules of construction as other legacies. The rule of construction, as claimed, works no hardship for the widow, nor is she liable to be entrapped thereby. Before she is obliged to decide as to the acceptance of the offer made for her dower interest in the estate, she has ample time to know of what the estate consists. The estate must then have been inventoried, and all claims against the estate presented. A slight mathematical computation will then enable her to decide whether to accept

the offer for her dower or not. In this case the widow was duly apprised of the question; she was an executrix, knew the extent of the estate and amount of the debts, and even consulted the judge of probate upon the question, and then made her decision.

5. The court below erred in excluding the evidence offered by Mrs. Bryant, as to the circumstances attending her adoption, and the affection with which she was regarded by the testator. The plaintiff states in the complaint a part of the attending circumstances; we certainly had the right to show the rest. We offered to show the date of the attempted adoption in order to show that there was at that time no law existing in this state providing for the adoption of children, but this the court, erroneously we think, refused to allow. Upon the question of intention as to the disinheritance of a child by a parent, the extent of his affection for her is a very pregnant and pertinent subject of inquiry. There is a wholesome presumption against such a disinheritance, and the ground for this presumption is largely the *presumed affection. Hamilton* v. *Downs,* 33 Conn., 213; *Lyon* v. *Acker,* id., 224; *Doe* v. *Wilkinson,* 2 T. R., 209; *Doe* v. *Dring,* 2 M. & Sel., 448; 2 Jarman on Wills, 742. Mrs. Barber had accepted the trust created by her husband for the benefit of her daughter. During her lifetime this question of her conflicting interests, individually and as trustee, in the construction of the fifteenth clause of the will, had arisen. In both capacities she took the advice of the probate judge. She willingly and fully accepted his decision, and thereafter in all things recognized the binding force of the trust she held for the benefit of her daughter and her daughter's interest therein, and intended and endeavored to preserve that interest.

*J. R. Buck,* for the appellees, legatees of Mrs. Barber, cited—2 Redf. on Wills, 362; *Lord* v. *Lord,* 23 Conn., 327; *Hickey* v. *Hickey,* 26 id., 261; *Hubbard* v. *Hubbard,* 6 Met., 50; *Pollard* v. *Pollard,* 1 Allen, 490; *Towle* v. *Swasey,* 106

Mass., 100, 105; *Richardson* v. *Hall*, 124 id., 229, 233; *Williamson* v. *Williamson*, 6 Paige, 298; *Isenhart* v. *Brown*, 1 Edw. Ch., 411; *Warren* v. *Morris*, 4 Del. Ch., 289, 302; *Reed* v. *Reed*, 9 Watts, 263; *Clayton* v. *Aikin*, 38 Geo., 320.

LOOMIS, J. The principal question for review in this case relates to the construction of the third, fourth and fifteenth clauses of the will of Gardner P. Barber, deceased.

The third clause is as follows:—" I give, devise and bequeath unto my beloved wife, Abby H. Barber, to her and her heirs forever, the sum of fifty thousand dollars, the same to be in lieu of dower." The fourth clause gives $25,000 in trust to Mrs. Barber, for the use of Lizzie G. Barber (an adopted daughter), and after her death the principal sum to be paid to her children, but if no children survive her, then $5,000 of the principal sum is to be given to her husband and the balance to Mrs. Barber and her heirs. Following this are nine clauses containing as many legacies of money to different persons, aggregating twenty-one thousand dollars, making in all ninety-six thousand dollars of legacies payable in money.

There is a general bequest of the rest and residue of the estate, both real and personal, to his wife, and then follows the fifteenth clause, which is as follows:—" I hereby make, constitute and appoint my beloved wife, Abby H. Barber, and Caleb M. Holbrook, to be executors of this my last will and testament; and I hereby direct my said executors that if my said estate shall not be sufficient to pay in full the aforesaid legacies, then the devise to my beloved wife, Abby H. Barber, and to Abby H. Barber in trust for Lizzie G. Barber, shall be paid first and in full, and the other devises *pro rata*."

Mrs. Barber accepted the provisions of the will. The record shows that the assets of the estate do not exceed forty-eight thousand dollars, with which to pay legacies calling for ninety-six thousand dollars.

The precise question in controversy is, whether the two legacies, to Abby H. Barber $50,000, and to Abby H. Bar-

ber, trustee for Lizzie G. Barber, $25,000, abate *pro rata*, or whether the widow has the preference by virtue of her position as purchaser of the testamentary estate given for the relinquishment of her dower.

The law is well settled by the uniform current of authorities that a bequest in lieu of dower, accepted by election, is so far based upon a valuable consideration that it has priority over all other legacies and will not abate with them. Such is the doctrine of this court in *Lord* v. *Lord*, 23 Conn., 327.

But the learned counsel for the defendant suggested that the doctrine as to this state was not well founded, because the distinction between dower at common law and that which obtains in this jurisdiction had been overlooked. At common law the right attached to all the lands of which the husband was ever seised during coverture, while under our statute it attaches only to the real estate of which he died possessed. Upon this distinction it was argued that, while there would be a good consideration for the relinquishment of the dower where the common law prevails, there could be no valid consideration under our law. This argument assumed that the consideration must consist in the relinquishment of a title vested in the wife during coverture. This we think is a misapprehension. The consideration is the relinquishment of dower for the testamentary gift, but the contract is not made during coverture. The husband's offer of a price for his wife's legal estate is only made by the will, which takes effect upon his death, and the wife's acceptance can only be after that event; so that what the wife relinquishes by her election must be the dower estate which vested in her at her husband's decease. The consideration therefore is of the same nature precisely under our statute as under the common law, although under the latter it may happen to be of greater value, which fact has no materiality in the argument. When the wife accepts the offer in the will she parts with a vested legal estate, and takes, instead, the testamentary compensation by virtue of a contract then made. The result of our brief

review is to confirm the old doctrine that the widow takes as a purchaser, and therefore we conclude that the legacy to her, constituting the purchase money, must be paid in preference to other legacies, which in the comparison are considered mere bounties.

This however does not conclude the matter at issue. We must again recur to the will to determine what price was offered for the dower, and upon what conditions. If the latter require the sum first named to be reduced, then the reduced sum is regarded as the price offered. But the fact that the wife takes her legacy as a purchaser will always be important when the words of the condition are of doubtful import or application. The offer of a specific sum in lieu of dower is always to be construed as if the words "to be paid in full in preference to all other legacies" were added; hence, if a subsequent condition does not make it clear that the testator intended to reduce the sum offered, it must stand with the preference attached. With these considerations in view we come to the question as to the construction to be given to the fifteenth clause. Did the testator thereby intend to take away the preference which the law would otherwise give to his wife over the legacy to the daughter, and to make both legacies abate *pro rata* in the event of a deficiency?

We find no words which make such intent manifest, and the probabilities are all against it. It is evident that the contingency of a deficiency so great as to render it impossible to pay the legacies to the wife and daughter was never thought of, much less provided for. It was thought possible that there might be less than ninety-six thousand dollars, but no such shrinkage as to reduce the assets to seventy-five thousand. The testator therefore brought these nine items into one class to share a *pro rata* abatement, but where the testator made only one class subject to abatement, the defendant would make two. The claim for such a construction is founded on the words "to be paid first and in full," as applied to the legacies to the wife and daughter. These words, it is argued, place the two

legacies in question on the same plane in the mind of the testator, not for the purpose of withdrawing them from the *pro rata* class and preserving the status given previously in the will, but for the purpose of repealing (so to speak) the preference given by the law to the wife over the daughter. This view we cannot accept. The words import an undoubting belief in the mind of the testator that these two legacies could and therefore should be paid in full; but it by no means follows that they indicate the mind of the testator in case they could not be paid in full. In case of a shrinkage of assets below the ninety-six thousand dollars called for to meet the eleven items in the will, the testator wanted the loss to fall on the more remote objects of his bounty and not upon the wife and daughter; hence he very naturally said, for the purpose of protecting their legacies and of leaving them just as they stood previously in the will, that they were to be paid first and in full, while the others should abate *pro rata*.

The rulings of the court rejecting certain parol evidence were so clearly right that we refrain from any discussion of the matter.

There was no error in the judgment complained of.

In this opinion the other judges concurred; except GRANGER, J., who dissented.