FIRST NATIONAL BANK OF BIRM-
INGHAM and James Kelly Dixon, II,
Executors of the Estate of Brewer Dix-
on, Deceased, Plaintiffs,

v.

The UNITED STATES of America,
Defendant.

Civ. A. No. 69–71.

United States District Court,
N. D. Alabama, S. D.

June 14, 1971.

Arnold Lefkovits, Berkowitz, Lefkovits & Patrick, Birmingham, Ala., for plaintiffs.

Wayman G. Sherrer, U. S. Atty., Birmingham, Ala., Lynn Ross, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OF OPINION

POINTER, District Judge.

Plaintiffs seek a recovery under 28 U.S.C. § 1346(a) (1) of estate taxes alleged to have been erroneously collected from the Estate of Brewer Dixon, deceased. The sole issue for decision is the determination of the marital deduction allowable under I.R.C. § 2056. The cause has been submitted upon the complaint, answer, provisions of the pretrial order, and detailed stipulations as to facts and documents. The court has been furnished excellent briefs by the parties.

Brewer Dixon died on May 18, 1964, survivied by his wife and by three adult sons from an earlier marriage. His will, consisting of the basic testament and two codicils, was duly admitted to probate in Talladega County, Alabama. As of the date of death his gross estate —for both probate and federal estate tax purposes—had a value of $124,832.-29. Debts and administrative expenses amount to $15,554.64.

Under the will he gave his wife an automobile worth $1,600, the right to continue living in their residence,[1] and a general legacy in trust equal in value to one-fourth of his adjusted gross estate for federal estate tax purposes with certain prescribed adjustments.[2] The three sons were named as the residuary legatees and devisees.

Were this case to be decided solely on the facts related in the two preceding paragraphs, the issue would be quite simple. The government concedes that the gifts of the automobile and of the general legacy[3] would qualify for the marital deduction, and the taxpayers concede that the devise of the interest in the residence would not so qualify. The sole issue would be whether or not the general legacy should be charged (and reduced) for a prorata share of estate taxes payable by the estate—and, should the government prevail, it would be a matter of simple algebra to calculate the marital deduction allowable.

The complications arise due to other dispositive provisions of Mr. Dixon's will—for the total non-residuary gifts amount to $128,511.16, while the net probate estate is only $109,277.65 even before payment of the estate taxes. By categories the will makes the following dispositions: specific devises to sons, $65,000; specific devise to wife, $13,-191.75; specific legacy to a son, $6,500; specific legacy to wife, $1,600; general legacy to wife, $25,719.41; and general legacies to non-family members, $16,500. Alabama follows the traditional order for abatement—first the residuary gifts, then the general legacies, and finally the specific legacies and devises. See, e. g., Austin v. Pepperman, 278 Ala. 551, 179 So.2d 299 (1965). Under such a rule there would have been available for distribution among the general legatees (having potential interests of $42,219.-

---

1. In briefs both parties have assigned a value to this interest of $13,191.75, utilizing the life estate factor for age 35 contained in Regs. § 20.2031–7. Since her life estate was under the will to terminate should she cease to reside in the homeplace, it seems questionable whether such a calculation is appropriate. However, as this point is not critical to the decision herein reached, the court accepts for purposes of this opinion the valuation indicated in the briefs.

2. The adjusted gross estate is $109,277.65. One-fourth of this amount, $27,319.41, is however under the formula to be reduced by the value of the automobile which also would qualify for the marital deduction. The resulting figure for the general legacy is $25,719.41.

3. The widow was given an equitable life estate, coupled with a general testamentary power of appointment. The interest qualifies for the marital deduction under I.R.C. § 2056(b) (5) as an exception to the "terminable interest" rule.

41) only that part of the general assets valued at $22,985.90 remaining after payment of the estate taxes.

The widow thereupon, within the time limits set by Alabama statute, filed a dissent from the will, asking instead for her distributive share and dower in her husband's estate. In general this would have provided her, subject to offsets on account of her separate estate, with a life estate in one-third of the real estate and with one-fourth of the personal estate. See 1940 Code of Alabama, Title 16, § 10; Title 34, §§ 40, 42, 43. Her rights would of course have come ahead of the claims of the other devisees and legatees under the will, Merchants Nat'l Bank v. Hubbard, 222 Ala. 518, 133 So. 723 (1931), and, according to a recent decision, would not have been subject to prorata abatement for estate taxes. Cox v. United States, 421 F.2d 576 (5th Cir. 1970).

On February 9, 1965—before the widow had received any property in response to her dissent and indeed before the state court had determined her separate estate, ascertained her distributive share in the personalty, or considered the several matters necessary to an assignment or satisfaction of her dower rights—an agreement was reached between the widow, the three sons, and the Executors relative to the further administration of the estate.

■ Under the agreement all of the real estate was to be sold,[4] $6,500 of the specific legacies to non-family members was to be paid,[5] and the net estate remaining after payment of debts, administrative expenses and taxes was to be divided in four equal parts among the widow and the three sons. It was an agreement for distribution of assets "among the parties hereto and under the last will and testament of Brewer Dixon, deceased," but with certain modifications being made in the interests of the principal beneficiaries. Its net effect was to withdraw the widow's dissent and claim of dower and distributive rights; and it was so treated thereafter by the state court administering the estate.[6]

It is appropriate to detail the relative positions of the principal beneficiaries under the will as probated and under the agreement:

*Widow.* Under the will Mrs. Dixon was to receive a limited interest in the homeplace and, subject to the question of abatement for other legacies and devises and for estate taxes, beneficial ownership of one-fourth of the adjusted gross estate.[7] Under the agreement she received one-fourth of the net estate remaining after payment of debts, expenses, taxes, and part of the legacies—an amount which is calculated to be $24,564.33.[8] In effect she

---

4. The widow was given the right to remain in the house until the sale.

5. A charitable legacy in the amount of $10,000 was in the will expressly made subject to the availability of sufficient funds in the estate and left to the discretion of the Executors. By the agreement the Executors in effect determined that such funds were not available and that the legacy should be abated.

6. The Alabama courts recognize the power of the equity court to permit a seasonable withdrawal of a dissent unadvisedly made. Reaves v. Garrett's Adm'r, 34 Ala. 558 (1859); Adams v. Adams, 39 Ala. 274 (1864); Merchants Nat'l Bank v. Hubbard, 222 Ala. 518, 133 So. 723 (1931). Under her dissent the widow would have received—even before any reduction for her separate estate—only some

$4,900 in personalty and a life estate in one-third of the realty (which would have a monetary value under appropriate tables of approximately $20,000).

7. The automobile was to be received free of trust.

8. The net estate before taxes was $102,-777.65 ($124,832.29—$15,554.64 in debts and taxes—$6,500 in payable legacies). Of this amount $3,014.50 represented furnishings owned by Mr. Dixon's first wife, with respect to which the agreement provided the widow was to receive only $\frac{1}{16}$ rather than $\frac{1}{4}$. Thus the widow was to receive $188.41 [$\frac{1}{16} \times $3,014.50] + $24,-940.79 [$\frac{1}{4} \times $99,763.15]—her $\frac{1}{4}$ of the estate taxes. After an algebraic computation the gross taxes amount to $2,259.86, so that her share is charged with $564.97.

disclaimed the devise of the interest in the home, converted her interest in the car from in-kind to a pecuniary amount, received her share of the estate outright rather than in trust, and accepted some abatement for part of the estate taxes and part of the non-family legacies.

*Sons.* Under the will the sons were to receive, subject to the question of abatement for other legacies and estate taxes, specific gifts in the amount of $71,500 and the residuary estate, having no value under the circumstances. *Under the agreement* they disclaimed the specific gifts, taking instead residuary interests having a total net value of $75,953.54.

■ Much of the parties' initial attention in this case was devoted to whether or not the interest passing to the widow would qualify for the marital deduction if the agreement were treated as the ascertainment, determination or compromise of the widow's dower rights. See United States v. Crosby, 257 F.2d 515 (5th Cir. 1958); United States v. Hiles, 318 F.2d 56 (5th Cir. 1963); Taylor v. United States, 388 F.2d 849 (5th Cir. 1967); Cox v. United States, 421 F.2d 576 (5th Cir. 1970). Suffice it to say, these cases are inapposite as the agreement effected a withdrawal of the dissent and a compromise between the parties *qua* beneficiaries under the will. What is received in settlement must be *characterized for tax purposes by the nature of the underlying and disputed claims resolved.* Early v. Comm'r, 445 F.2d 166 (5th Cir.; May 21, 1971); Howard v. Comm'r, 447 F.2d 152 (5th Cir., May 21, 1971).

There remains however the question of whether or not the widow by virtue of this settlement received more than she was entitled to receive under the will—hence whether part of what she received has come about as a consequence of disclaimers or renunciations by the sons. Mr. Dixon's death occurred on May 18, 1964, prior to the effective date prescribed in P.L. 89–621 [see present I.R.C. § 2056(d) (2)], and therefore interests passing to the widow by virtue of partial disclaimers by the sons are not to be treated as "passing from the decedent" to her. The government contends that Mrs. Dixon's legacy under the will ($25,719.41) would have been subject to abatement on account of the other devises and legacies and on account of estate taxes; taxpayers deny this.

■■ As previously noted Alabama has adopted the rule that, in case of insufficient assets, the loss falls first on the residuary estate, then on the general legatees, and finally on the specific devisees and legatees. But Alabama has also recognized an exception to this rule in the case of a widow, holding in Steele v. Steele's Administrator, 64 Ala. 438 (1879), that testamentary provisions made for the wife are to be accorded a priority over all other legatees and devisees, being right behind the claims of creditors.[9] This holding has not been overruled, questioned, or distinguished in any succeeding reported decision of the Alabama appellate courts—at least none has been found by either party hereto or by the court in independent research.[10] This Court is bound to conclude that under Alabama law the general bequest to Mrs. Dixon under the will

9. The justification for this holding is premised upon her being purchaser for value by giving up her right to dissent. It might be arguable that therefore one should compare her rights under the will with those under a dissent and then (by analogy to the recent *Early* and *Howard* cases, *supra*) disallow those rights traceable to a dissent interest not qualifying for the marital deduction. Such an argument should, however, fail because the theory of consideration is but a rationalization for the rule of construction and does not require the matching of benefits, as is indicated by cases in other states which hold that her priority should not be affected on account of her testamentary rights exceeding her dissent rights. See Annot., 2 A.L.R.2d 607, 621.

10. The government cites Austin v. Pepperman, 278 Ala. 551, 179 So.2d 299 (1965) in which, without mentioning the *Steele* case, the Alabama court held that be-

was not subject to abatement on account of the other devises and legacies—and that accordingly the disclaimers by the sons did not add to the interests she was to receive under her husband's will. It may be noted that the preference given the widow in this regard by Alabama is in line with the weight of authority from other states. See Annot., 2 A.L.R. 2d 607 (1948).

Nor under the will was her legacy chargeable with any estate taxes. Her legacy was in its terms stated as being one-fourth of the gross estate less "debts, claims, funeral expenses and expenses of administration, but not the amount of any estate or inheritance taxes." Estate taxes in Alabama are as a general rule payable first out of the residuary estate, Ala.Code, 1940, as amended, Title 51, § 449(1), and where, as here, the residuary estate is insufficient there would be a loss charged to the specific and general legacies following the appropriate order of abatement. But, as noted, all specific gifts and general gifts must abate before the gifts to the wife abate. Steele v. Steele's Adm'r, *supra*. Here the assets of the estate outside those bequeathed or devised to the wife would have been sufficient to pay all debts, claims, expenses and taxes. Accordingly under the will the gifts to the wife were not chargeable with a prorata part of the estate taxes. *Cf.* Cox v. United States, *supra*.

The conclusion then is that the disclaimers by the sons under the agreement did not result in the widow receiving more than she would have received under the will. To the contrary, she received under the agreement somewhat less than she would have obtained under the will had the issue of abatement been resolved in the state court. To the extent she received less, this is to be treated as a disclaimer or renunciation by

her and does not qualify for the marital deduction. I.R.C. § 2056(d) (1). The estáte is entitled to a marital deduction of $24,564.33; and the correct gross tax liability of the estate under I.R.C. § 2001 is $2,259.86. There are no credits allowable under I.R.C. §§ 2011–16.

Plaintiffs paid on August 18, 1965, concurrently with the filing of the return, the amount of $2,586.31 in federal estate taxes and on March 16, 1968, after audit, an additional $3,669.21 plus $548.92 in interest—total payments of $6,804.44. Taxpayers have overpaid their taxes in the amount of $4,544.58. On August 12, 1968, within the statutory period, their claim for refund was filed; and on February 11, 1969, following notice of disallowance, this suit was instituted. Judgment is due to be granted for the plaintiffs in the amount of $4,544.58, together with interest on $4,218.13 from March 16, 1968, and with interest on $326.45 from August 18, 1965. Judgment will be entered accordingly.

---

quests to a *widower* would abate equally with bequests to granddaughters and a brother. However, in Alabama a widower has no right to dissent from the will and the wife can completely cut off her husband in her will so that he receives

nothing. Mindler v. Crocker, 245 Ala. 578, 18 So.2d 278 (1944). Accordingly, the rationale which supports the exception to abatement in favor of the widow is simply absent in the case of the widower.