276 So.2d 412

**Bobbie Louise ROWE, Individually and as Executrix of the Estate of Louise Paulk, Deceased,**

v.

**W. A. NEWMAN, as Executor under Will of H. B. Paulk, Deceased, et al.**

**Lucille Paulk YOUMANS**

v.

**W. A. NEWMAN et al.**

**4 Div. 433, 433-X.**

Supreme Court of Alabama.

Sept. 29, 1972.

Rehearing Denied Nov. 30, 1972.

Rushton, Stakely, Johnston & Garrett and J. Theodore Jackson, Montgomery, for appellee and cross-appellant Lucille Paulk Youmans.

Hill, Hill, Stovall, Carter & Franco, Montgomery, for appellant Rowe, individually, and as executrix.

W. H. Albritton, Andalusia, for appellee Newman, as executor.

COLEMAN, Justice.

One of the parties to a proceeding for the construction of a will appeals from a decree construing the will. Another party cross appeals and cross assigns errors.

The testator, H. B. Paulk, died May 5, 1970. He left surviving him Louise Paulk, his widow, to whom he was married in 1951 and with whom he had lived continuously until his death.

He left surviving him also a daughter by a former marriage, Lucille Paulk Youmans.

The widow died November 20, 1970, and left surviving her a daughter, Bobbie Louise Rowe, the child of a deceased former husband. The widow, Louise Paulk, left a will with Bobbie Louise Rowe as executrix and sole devisee and legatee thereunder. Bobbie Louise Rowe, individually and as executrix of her mother's will, is the appellant.

The testator, H. B. Paulk, devised and bequeathed to his widow, Louise Paulk, the following:

1. Testator's dwelling place in fee simple (appraised value $15,000.00), together with all household furniture, fixtures, and improvements (furniture, fixtures, and personal effects are valued at $1,500.00, and this is included in the value of the personal property in the next paragraph).

2. Item Third. ". . . . all of the personal property of which I may die seized or possessed other than the shares of stock in H. B. Paulk Grocery Company, hereinafter set forth, and other than the horses and cows which I own at the time of my death."

This consisted primarily of cash, accounts receivable, and some stock and miscellaneous personal property, the whole having an aggregate value of $62,317.34.

The figure, $62,317.34, includes an account of Paulk Grocery Company in the amount of $28,313.98 listed on the books as being in favor of H. B. Paulk. Lucille Paulk Youmans contends that the account should be treated as a contribution to capital. The trial court declined to pass on the issue and reserved it for future consideration. In all calculations, including the above estimate of value, the account is treated as an item of personal property falling within the bequest to the widow, Louise Paulk, and appellant believes that this will be the ultimate decision on this item. If, however, Lucille Paulk Youmans

should prevail on this point, the general bequest of personalty, including the specific bequest of furnishing, etc., will be reduced from $62,317.34 to the alternate value of $34,003.36.

3. Fifty (50) shares of common stock in H. B. Paulk Grocery Company, appraised at $25,000.00.

The trial court reduced the amount of this legacy from 50 shares to 40 shares on the theory that there was an inter vivos gift. The correctness of this ruling is one of the issues on this appeal. If the inter vivos gift is an ademption, as held by the trial court, the valuation of this legacy of stock will be reduced from $25,000.00 to $20,000.00.

4. ". . . . for her lifetime only, so long as she does not remarry the income from the seven rental houses . . . ." The death of the widow Louise Paulk, has terminated her interest in the houses and the fee is vested in Lucille Paulk Youmans.

5. The widow received, outside the will, as beneficiary of insurance on the life of her husband, the sum of $11,000.00.

The testator devised and bequeathed to his daughter, Lucille Paulk Youmans, the following:

1. All cattle and horses owned by testator at time of his death appraised at $600.00.

2. "The balance of the shares which I own or 188 shares . . . ." of common stock in H. B. Paulk Grocery Company, Inc., appraised at $94,000.00.

After execution of the will, testator made inter vivos gifts of 45 shares to Lucille Paulk Youmans and her family, and 10 shares to his wife, Louise Paulk. The trial court considered the 10 shares given to the wife as an ademption and deducted the 10 shares from her legacy of 50 shares, and included the 10 shares with 178 shares to round out the stock given to Lucille

Paulk Youmans and her family at 188 shares which would have an appraised value of $94,000.00. As already noted, the ademption of the 10 shares bequeathed to the widow is one of the issues on the appeal.

If the bequest to the widow is not reduced to 40 shares, only 178 shares would be left for Lucille Paulk Youmans and her children under the will and by inter vivos gifts within three years of death; and the appraised value of the Youmans' shares for estate tax purposes would be reduced from $94,000.00 to an alternate value of $89,000.00.

3. "All of the rest and remainder of the lands of which I may die seized or possessed . . . .," including the land and seven rental dwellings already mentioned, other than testator's dwelling place devised to his wife. The residual real estate was initially determined to be 200 acres and was appraised at $52,300.00. Lucille Youmans asserts that the actual acreage should be 178.7, and the appraised tax value would be decreased to an alternate of $46,975.00.

4. Lucille Paulk Youmans received outside the will 285 acres conveyed to her by testator three days before his marriage to Louise Paulk. In view of the fact that testator reserved in writing all income from and retained possession of the property for his life, the executor was advised by counsel that the property may be part of testator's taxable estate. The property was appraised at $57,000.00.

The total debts, claims, charges, and expenses of administration have been estimated by the executor of testator's will at $40,100.00.

Estate taxes were estimated at $23,850.00 to $62,300.00, the difference arising from the amount of the estate which may be allotted to the widow, which amount, under any and all computations, would be substantially less than one-half of the adjusted gross estate and would be credited as a marital deduction exempt from estate tax.

At time of testator's death, the City of Opp owed him $10,000.00 on an executory contract for the sale of 80 acres of land. The total sale price was $40,000.00, of which $30,000.00 had been paid. Following testator's death, his executor collected the $10,000.00 and delivered a deed to the City of Opp pursuant to Title 47, § 36, Code 1940. The trial court held that the installment collected by the executor should be treated as real estate and awarded it to Lucille Paulk Youmans under devise of real estate to her. The appellant assigns this ruling as error.

Ethel Lee Paulk, a former wife of testator, filed a claim against his estate based on a decree dated June 21, 1941, whereby Ethel Lee Paulk and testator were divorced and testator was ordered, among other things, to pay to Ethel Lee Paulk $50.00 per month during her lifetime unless she remarries. The trial court ruled that her claim should be disallowed. This ruling is cross assigned as error by Lucille Paulk Youmans.

The trial court stated the questions for decision as follows:

"1. What assets of the estate are to be used by the Executor for the payment of debts, claims and expense of administration?

"2. What properties of the estate are to be charged with the burden of the estate tax?

"3. Is the balance payable by the City of Opp under land sale contract dated March 8, 1968 (copy of which is made a part of the Petition) to be treated as *personal* property, or made available for payment of debts, claims and expense of administration, or is it a part of the real estate vesting directly in the devisee of the land?

"4. Do the legatees of the Paulk Grocery Company stock share ratably in an ademption of the gift stock, or is the deficiency of stock to be taken entirely from the legacy of Lucille Youmans, or

is the legacy of 50 shares to the widow, Louise Paulk, to be reduced by the 10 shares given to her after the execution of the Will?

"5. Is the claim for continuing alimony filed by Ethel Lee Paulk allowable as a claim against the estate, and, if so, should it be commuted?"

Appellant, Bobbie Louise Rowe, daughter of the widow, assigns as error the ruling of the trial court with respect to questions 1, 3, and 4.

Appellee, Lucille Paulk Youmans, daughter of testator, cross assigns as error the ruling with respect to questions 2 and 5.

*Question 1. Assignments 1, 2, and 3.*

The first question is stated as follows:

"1. What assets of the estate are to be used by the Executor for the payment of debts, claims and expenses of administration?"

The court answered this question as follows:

"In view of the fact that this Court has no power to enter an order for the sale of the *land* for the payment of *debts* and *expense of administration*, the *order* of *abatement* for *this* purpose is: (1) residual personalty, of which there is none, (2) *personal property generally* bequeathed to the widow, Louise Paulk, (3) then personal property *specifically* bequeathed, ratably, (4) then *general* devises and finally (5) *specific* devises, of land.

"   .   .   .

"1. The debts, claims and expense of administration should be paid out of the general bequest of personal property, which property appears to be adequate for this purpose without resort to the personal property specifically bequeathed and the bequest to the widow, Louise Paulk, in Article Third of the Will, is abated to this extent."

The appellant assigns this ruling of the trial court as error.

Appellant contends that the devises and bequests to the widow were given to and accepted by her in lieu of dower and distributive share in her husband's estate; that a widow who receives a devise or bequest under the will of her husband and thereby waives her right to dissent, takes as a purchaser for value, and legacies and devises to others must abate to the extent required to exonerate her share from encroachment for debts, claims, and expenses of administration; and that she has a preferred status which is contractual in nature. In support of this argument appellant cites the following authorities: Steele v. Steele's Adm'r, 64 Ala. 438; Maybury v. Grady, 67 Ala. 147; Kelly v. Richardson, 100 Ala. 584, 13 So. 785; Grimes v. Grimes, 242 Or. 158, 408 P.2d 731; First National Bank of Birmingham et al. v. United States, D.C., 328 F.Supp. 1339; Reid v. Corrigan, 143 Ill. 402, 32 N.E. 387; Hartman's Estate, 233 Iowa 405, 9 N.W.2d 359; Carper v. Crowl, 149 Ill. 465, 36 N.E. 1040; Sherman v. Riley, 43 R.I. 202, 110 A. 629; 2 A.L.R.2d 607, and others.

In *Steele*, this court, in considering the priority due to be accorded to the rights of a widow under her husband's will, had this to say:

"9. It is contended for Mrs. Steele, that inasmuch as she surrendered her dower and distributive share in her husband's estate, in consideration of the provision, real and personal, made for her in the will, this constitutes her a purchaser for value, and she is entitled to hold, even against creditors, so much of the provision made for her as is the equivalent of her dower. True, the law secured to her right to dower against the claims of creditors, no matter how meritorious and a wife's inchoate claim of dower is treated as having such value, that its relinquishment furnishes a sufficient consideration to uphold a promise or conveyance made to her, if not unreasonable in amount or value. In Maryland they have a statute on the subject; and there it is held, that a widow, who,

in consideration of the provision made for her in the will, has failed to dissent and claim dower, stands in the category of a purchaser, and her right under the will is superior to that of creditors. (Citations Omitted) A similar principle was declared, without a statute, in Stewart v. Carson, 1 Dess. 500. On the other hand, a few cases hold that a widow thus circumstanced has no preferences even over other legatees; but that legatees and devisees must share and abate equally, if the will declare no priorities. (Citations Omitted) The weight of authorities, however, holds that she is a purchaser, so far as to have a prior right over all other legatees and devisees; but that her claim must yield to that of creditors. (Citations Omitted).

"We feel it our duty to follow the principle last stated; and while Mrs. Steele's claim must be postponed to that of creditors, she has a paramount right over all other devisees and legatees. Should a sale of the realty become necessary for the payment of debts, all other property of the estate must be sold, before that devised to her is sold." (64 Ala. at 462, 463)

The following statement in an opinion by the United States District Court for the Northern District of Alabama appears to be pertinent to the matter under consideration, to wit:

"As previously noted Alabama has adopted the rule that, in case of insufficient assets, the loss falls first on the residuary estate, then on the general legatees, and finally on the specific devisees and legatees. But Alabama has also recognized an exception to this rule in the case of a widow, holding in Steele v. Steele's Administrator, 64 Ala. 438 (1879), that testamentary provisions made for the wife are to be accorded a priority over all other legatees and devisees, being right behind the claims of creditors. This holding has not been overruled, questioned, or distinguished in any succeeding reported decision of the

Alabama appellate courts—at least none has been found by either party hereto or by the court in independent research. This Court is bound to conclude that under Alabama law the general bequest to Mrs. Dixon under the will was not subject to abatement on account of the other devises and legacies—and that accordingly the disclaimers by the sons did not add to the interests she was to receive under her husband's will. It may be noted that the preference given the widow in this regard by Alabama is in line with the weight of authority from other states. See Annot., 2 A.L.R.2d 607 (1948)." First National Bank of Birmingham et al. v. United States, supra, 328 F.Supp. at 1342, 1343.

■ Under the rule which gives priority to the provisions in the will in favor of the widow, it is not necessary to discuss certain matters argued with respect to the exhaustion of personalty to pay debts before realty is used for what purpose. Neither is a discussion of priority between various types of bequests and devises necessary. We are of opinion that the provisions for the widow have "a paramount right over all other devisees and legatees."

■ Appellee Youmans argues to the effect that *Steele* should be construed to hold that the value of realty or personalty received by the widow under her husband's will in lieu of dower is entitled to favored treatment to the extent of the value of the widow's dower interest which she is surrendering. For example, Youmans argues that if the widow's dower is worth $10,000.00, and the husband's will left the widow $20,000.00, only the first $10,000.00 of the gift to the widow would be entitled to favored treatment.

We do not agree. Appellee's argument is answered by the Supreme Court of Iowa as follows:

"The theory is that a wife cannot without her consent be deprived by her husband's will of her dower or distributive share. Where she accepts the provisions of the will in lieu of dower, the estate receives a valuable consideration by a relinquishment of that right, which in effect makes her a purchaser for value of her legacy. Since the right of dower is superior to all legacies, the bequest in lieu of dower is also to be preferred over all other legacies. This is true even though the so-called gratuitous legacies are specific and the legacy to the widow is general.

"The widow by the payment of consideration, i. e., the relinquishment of her dower, is treated not as a mere beneficiary but as a quasi creditor. A testamentary provision for the wife in lieu of dower amounts to an offer by the husband of a price for the extinguishment of dower. By accepting the provision the widow agrees to the terms, relinquishes her dower and is entitled to the price in preference to those having no legal claim against the estate, whom the testator might have excluded from his bounty. It is, in effect, a matter of contract between husband and wife. The doctrine is applied even though the value of the bequest exceeds the value of her dower, since it is the husband's right to fix whatever consideration he pleases for the surrender of the wife's dower. The rule does not prevail, however, where the will clearly discloses that the testator intended that the provision for his wife should not be preferred over other legacies. The will before us discloses no such intention.

"Some of the authorities in support of these views are (Citations Omitted).

"There are few, if any, decisions in conflict with the above. We are disposed to follow these authorities and affirm the lower court's holding that appellee took under the will as a purchaser for value and that the legacy provided in Item III must abate to such extent as necessary to satisfy the bequest to her.

". . .

"In this situation the law presumes that the testator's first concern was for

his wife, who held a legal claim against the estate in the form of her dower right, in preference to those having no legal claim on his bounty. Stated differently, it is presumed that the testator would have intended to prefer his wife, had he known of the insufficiency of assets to satisfy both bequests. 4 Page on Wills, Lifetime Edition, 334, 335, section 1501. And see authorities heretofore cited. As one case puts it, unless a contrary intent appears 'The offer of a specific sum in lieu of dower is always to be construed as if the words "to be paid in full in preference to all other legacies" were added; * * *' Security Co. v. Bryant, 52 Conn. 311, 322, 52 Am.Rep. 599, 601." In re Estate of Hartman, 233 Iowa 405, 409, 410, 411, 9 N.W.2d 359, 362–363.

Appellee Youmans says the doctrine of *Steele* does not apply in the instant case because the widow is no longer alive.

The widow died approximately four months after her husband's will had been admitted to probate. Title 61, § 19, provides that the widow must dissent within six months from the probate of the husband's will, except under circumstances which are not present in the instant case.

§ 21, Title 61, provides that if the widow die after the death of her husband and before the time for her dissent expires, upon a petition filed by her personal representative within the time prescribed, alleging that it would be to the best interest of her estate to dissent, the probate court has authority to declare dissent from such will for her. There was no dissent in the instant case.

Appellee Youmans argues that the statute does not give the legatee of the widow whatever rights the widow had under the *Steele* case, and that it was the widow's daughter, and not the widow who gave up the widow's right to dissent from the will of the husband; and that the daughter does not have the rights of a purchaser for

value as to the provisions for the widow under the husband's will.

In support of this argument appellee Youmans relies on Forepaugh's Estate, 199 Pa. 484, 49 A. 236, wherein a testator bequeathed "to his wife for life the interest of $25,000," with remainder over to his brothers and sisters. Testator also gave to his adopted daughter "the interest of $10,-000 for her life" and at her death the principal to her children, and if she should leave no child, then equally to testator's brothers and sisters.

At testator's death, his estate amounted to only $16,771.71, and the entire sum was awarded in trust for the widow, her legacy, because given in lieu of dower and not being called to abate.

On death of the widow, the stepdaughter claimed that ten thirty-fifths of the sum should be awarded to her for life. Apparently, the brothers and sisters of testator resisted the stepdaughter's claim and claimed that they were entitled to the entire sum as remaindermen after the termination of the widow's life interest in the money. The Supreme Court of Pennsylvania upheld the stepdaughter's claim, saying: "The privilege accorded to the widow, who, by virtue of her dower, is regarded as a purchaser, was purely personal, and did not extend to the brothers and sisters, who are volunteers."

The brothers and sisters did not acquire their interest in the money through the widow. She had only a life interest. There is no analogy in the instant case where the widow's daughter does claim through the widow who did not have merely a life interest but had absolute title under the will of her husband.

We are of opinion that appellant is correct in saying that: ". . . . In forbearing to dissent the personal representative of the widow is no less a purchaser for value than was the widow in her forbearance during lifetime."

*Assignment 8.*

The appellant assigns as error the following ruling in the decree, to wit:

"Furthermore, in the opinion of the Court, the paramount and precedent estate of the widow should be limited to the value of her statutory estate surrendered, or forfeited, by failure to dissent. . . . ."

For the reasons stated in the quotation from In re Estate of Hartman, supra, that ruling complained of in Assignment 8 is error.

■ The trial court erred in holding that the debts, claims, and expenses of administration should be paid out of the bequest to the widow in Article Third of the will. All other bequests and devises should be exhausted before the bequest to the widow can be applied to payment of debts, claims, and expenses of administration.

The rulings complained of in Assignments 1, 2, 3, and 8 are reversed.

*Question 2.*
*Cross Assignments 1–5, 8.*

"2. What properties of the estate are to be charged with the burden of the estate tax?"

Appellee Youmans says in brief:

"The circuit court charged the estate taxes against the interest of Mrs. Youmans and exempted Miss Rowe's mother's interest from any liability for estate taxes. . . . ."

Appellee argues that estate taxes are debts or charges against the estate and must be paid out of the primary fund of personalty.

■ We have already stated at length the reasons why the bequests and devises to the widow are not to be used to pay debts until all other property has been exhausted. The same reasons apply with respect to payment of estate taxes. We are of opinion that the trial court correctly held that the widow's share under the will was not subject to estate tax until all other bequests and devises had been exhausted. See Davis v. Davis, et al., 289 Ala. 313, 267 So.2d 158; First National Bank of Birmingham v. United States, supra; United States v. Crosby, 5 Cir., 257 F.2d 515; United States v. Hiles, 5 Cir., 318 F.2d 56.

*Question 3.*
*Assignments 4 and 5.*

"3. Is the balance payable by the City of Opp under land sale contract dated March 8, 1968 . . . . to be treated as *personal* property, . . . . or is it a part of the real estate vesting directly in the devisee of the land?"

Testator's will is dated March 1, 1965. At that time he owned the eighty acres of land which he contracted to sell to the City of Opp by instrument dated March 8, 1968. At testator's death, $10,000.00 of the purchase price remained unpaid. The executor subsequently collected the $10,000.00 from the City of Opp and a deed was delivered to the city.

The appellant claims that the $10,000.00 is personalty and goes to the widow under the bequest of personal property in Item Third of the will.

Appellee Youmans contends that the $10,000.00 goes to her under the devise of all lands which testator may own at the time of his death.

The trial court held that:

"The principal balance payable under the sale contract with the City of Opp goes to Lucille Youmans, subject to the use of same by the Executor for the payment of estate taxes."

§ 13, Title 61, Code 1940, recites:

"When any testator, after making his will, makes any contract for the conveyance of any property devised in such will, and the whole or any part of the purchase money remains unpaid to such testator at his death, the disposition of the property by such contract is not a revocation of the devise, at law or in eq-

uity, unless it clearly appears by the contract, or some other instrument in writing, to be intended as a revocation; and such property passes to such devisee, subject to the same remedies for a specific performance thereof in favor of the persons entitled thereto, against the person to whom such devise was made, as might be had at law or in equity against the heirs of the testator, had the same descended to them; and the purchase money, when recovered by the executor of the testator, must be paid to the devisee of such property."

In Boise v. Merry, 266 Ala. 286, 96 So. 2d 448, this court considered a similar contest between the devisees of realty and the legatee of personalty. Some of the cases cited by appellant in the case at bar were considered in *Boise*. This court held, however, that the rule of equitable conversion did not apply and that § 13, Title 61, did apply. This court said:

"Applying the situation disclosed by the bill to § 13, Title 61, supra, it thus appears that the testatrix, after making her will, made a contract for the conveyance of property which had been devised to appellees in such will and the purchase money remained unpaid to her at her death. By the terms of the statute, disposition of the property was not a revocation of the devise, unless intention to revoke was made to appear by the contract or some other instrument in writing, and the purchase money, when recovered by the executor was required to be paid to the devisees." (266 Ala. at 288, 96 So.2d at 450)

In the instant case, it is not contended that the intention to revoke the devise is made to appear by the contract or any other instrument in writing.

■ We are of opinion that Boise should be followed here and that the trial court ruled correctly as to the disposition of the $10,000.00. The decree in that respect is affirmed.

*Question 4.*
*Assignments 6 and 7.*

"4. Do the legatees of the Paulk Grocery Company stock share ratably in an ademption of the gift stock, or is the deficiency of stock to be taken entirely from the legacy of Lucille Youmans, or is the legacy of 50 shares to the widow, Louise Paulk, to be reduced by the 10 shares given to her after the execution of the Will?"

The trial court held:

". . . . The Court concludes that the legacy of stock to Louise Paulk, the widow, should be adeemed to the extent of 10 shares so that her Paulk Grocery Company stock would be a total of 50 shares, 10 shares by the gift of December 11, 1969 and 40 shares under Article Seventh of the Will. . . . ."

The appellant contends that the trial court erred in this ruling.

In considering the propriety of the ruling, the case of Willis v. Barrow, 218 Ala. 549, 119 So. 678, approved in Ullmann v. First National Bank of Mobile, 273 Ala. 154, 137 So.2d 765, contains pertinent definitions and principles relating to ademption.

■ A specific legacy is a bequest of a particular article or specific part of the testator's estate which is so described and distinguished from all other articles or parts of the same as to be capable of being identified.

■ A general legacy is a bequest chargeable upon the general estate, and not so given as to be distinguishable from other parts of the estate of the same kind, or, as otherwise defined, a general legacy is one of *quantity* merely, and includes all legacies not embraced within the definitions of specific and demonstrative legacies.

■ A demonstrative legacy is a bequest of money or other fungible goods, charged upon a particular fund in such a way as not to amount to a gift of the corpus of

the fund, or to evince an intention to relieve the general estate from liability in case the fund fail, and so described as to be undistinguishable from other things of the same kind.

■ The closely-held stock which was bequeathed by the decedent in this case falls within the definition of a demonstrative legacy set out in Willis v. Barrow, supra, and in the construction of wills, the law favors demonstrative or general rather than specific legacies, which are subject to extinguishment or ademption if the thing specified is not in being as part of the estate upon the death of the testator. Ullmann v. First National Bank, supra. This is but an application of the general rule that wills should be construed to uphold rather than defeat devises and bequests. However, all rules yield to, or may be considered in aid of, the primary rule, viz., find and give effect to the mind and purpose of the testator. This intention is paramount and is to be gleaned from the four corners of the instrument. Pearce v. Pearce, 199 Ala. 491, 74 So. 952; 96 C.J.S. Wills §§ 1127, 1128, p. 886; Willis v. Barrow, supra.

At the time the decedent executed his will, be owned 335 of the 350 outstanding shares of Paulk Grocery Company stock, his daughter, Lucille Youmans, owned 13 shares and two employees, Alton Newman and Lewis Steele, each owned 1 share. Although the decedent only owned 335 shares at the time he made his will, he purported to dispose of 348 shares (his 335 shares plus the 13 shares then owned by his daughter). The decedent, in the same item, also referred to the fact that two employees already owned one share each, pointing out that they would have 25 shares apiece after his death. Thus, the decedent was not simply purporting to dispose of the shares which he then owned, but was stating the number of shares which he wished each beneficiary to end up with after his death. It appears that the decedent intended for Alton Newman and Lewis Steele to own 25 shares each,

his brother Jack 2 shares, his sisters 2 shares each, or 8 shares together, his nieces and nephews 2 shares together, his first wife, Ethel Granger Paulk, 50 shares, his widow, Louise Paulk, 50 shares—or a total of 162 shares out of a total of 350 shares issued and outstanding and the balance of the shares, or 188 shares, to be owned by his daughter, Lucille Youmans. Thereafter and prior to his death he made gifts of 55 shares, 45 shares being to his daughter, Lucille Youmans and her family and 10 shares to his widow, Louise Paulk. This left him with only 280 shares at death. If the specific gifts of stock to the other named legatees were allowed in toto, Lucille Youmans would only own 136 shares, 13 of which she previously owned, 3 acquired by gift, and 120 shares under the will. Her family would own 42 shares acquired by gift, or a total of 178 shares, 10 shares short of the 188 shares referred to in the will. On the other hand, if the legacy of 50 shares to the widow is allowed in toto, she will own 60 shares (10 acquired by gift and 50 under the will) whereas it was the evident intention of the decedent that she own only 50 shares.

■ The trial court concluded, and we agree, that in order to give effect to the expressed intent of the decedent, the legacy of stock to Louise Paulk, the widow, should be adeemed to the extent of 10 shares so that her Paulk Grocery Company stock would be a total of 50 shares, 10 shares by the gift of December 11, 1969, and 40 shares under Article Seventh of the will.

*Question 5.*
*Cross Assignments 6, 7, and 9.*

"5. Is the claim for continuing alimony filed by Ethel Lee Paulk allowable as a claim against the estate, and, if so, should it be commuted?"

The instant proceedings were commenced by petition filed by the executor praying for construction of the will and for instructions. Exhibit C attached to the petition is a claim against the estate

presented by Ethel Lee Paulk whereby she asserts her right to alimony payments of $50.00 per month awarded to her in a divorce decree whereby she was divorced from testator.

The executor prays to be instructed whether he should commute the claim and pay same in a lump sum.

The trial court held that the claim should not be allowed.

On examination of the record before us, we have not found that Ethel Lee Paulk was brought into court on the proceedings on the executor's petition or that she has been made a party to this appeal. This court has said:

"The general rule in a court of equity is that all persons having a material interest, legal or equitable, in the subject matter of a suit, must be made parties, either as plaintiffs or defendants. The rule proceeds on the principle that no man's rights should be controverted in a court of justice unless he has full opportunity to appear and vindicate them; and further, that complete justice may be done and future litigation avoided, the performance of the decree being safe, because of the presence in court of all parties who have an interest in its subject matter. The general rule further is that if a bill is defective for the want of proper parties, advantage should be taken of the defect by plea, demurrer, or answer, and if not so taken, the objection is waived. The rule is subject to the exception that if a cause cannot be properly disposed of, on the merits, without the presence of the absent parties, the objection may be made at the hearing, or on error, it may be taken by the court ex mero motu. Prout v. Hoge, 57 Ala. 28. See also: Batre v. Auze's Heirs, 5 Ala. 173; McMaken v. McMaken, 18 Ala. 576; Woodward v. Wood, 19 Ala. 213; McCully v. Chapman, 58 Ala. 325; Watson v. Oates, 58 Ala. 647; Amann v. Burke, 237 Ala. 380, 186 So. 769; Matthews v. Matthews, 247 Ala. 472, 25 So.2d 259; Garrison v. Kel-ly, 257 Ala. 105, 57 So.2d 345." Rollan v. Posey, 271 Ala. 640, 645, 126 So.2d 464, 468–469.

▮ We are of opinion that Ethel Lee Paulk has a material interest in the question whether she has a right to payment of her claim for alimony under the divorce decree, and that her right to such payment cannot be determined while she is not a party to the proceeding. Accordingly, we do not consider Cross Assignments 6, 7, and 9.

On the appeal, affirmed in part, and reversed in part and remanded.

On the cross appeal, affirmed in part.

HEFLIN, C. J., and MERRILL, HARWOOD, BLOODWORTH, MADDOX, McCALL and SOMERVILLE, JJ., concur.

## ON REHEARING

COLEMAN, Justice.

The appellees, in briefs filed in support of application for rehearing, request that we extend the opinion as to some matters which are not discussed on original deliverance.

In particular, counsel request that we discuss the question whether personal property or real property, which was not bequeathed or devised to the widow, shall be sold to obtain funds to be used to pay debts, claims, and expenses of administration. This question was not presented on original submission.

The instant proceeding was commenced by a petition filed by the executor seeking instructions with respect to the execution of the will and administration of the estate. The executor makes the following statement in the petition, to wit:

"13. The name and post office addresses of all persons interested in this proceeding are as follows:

"Lucille Paulk Youmans, daughter of deceased, 150 West Oakdale, Crestview, Florida 32536

"Miss Bobbie Louise Rowe, as Executrix under Will of Louise B. Paulk, deceased, whose address is P. O. Box 17, Lake Shores Towers, 2306 Southwest 13th Street, Gainesville, Florida.

"each of whom are over the age of twenty-one years and are otherwise legally competent persons."

The issues presented and decided in this court on original submission were issues between Mrs. Youmans on one side and Miss Rowe in her capacity as executrix of the will of her mother and individually on the opposite side.

On original deliverance, we said:

". . . . We are of opinion that the provisions for the widow have 'a paramount right over all other devisees and legatees.'

". . . . . .

"The trial court erred in holding that the debts, claims, and expenses of administration should be paid out of the bequest to the widow in Article Third of the will. All other bequests and devises should be exhausted before the bequest to the widow can be applied to payment of debts, claims, and expenses of administration."

In brief on rehearing filed on behalf of the executor, counsel say:

"A cursory examination of the Petition for construction of the Will setting forth the assets of the H. B. Paulk Estate, clearly discloses that under the Opinion of this Court, it will be necessary to *sell assets.* The *personal property,* except personalty *specifically* bequeathed, has been allocated to the estate of Mrs. Louise Paulk. The only property remaining in the hands of the Executor from which funds for the purpose of paying debts and taxes can be obtained is the stock in H. B. Paulk Grocery Company, which was *specifically* bequeathed to several parties, including Mrs. Louise

Paulk. We understand from the Opinion of the Court, that the stock in H. B. Paulk Grocery Company bequeathed to Mrs. Louise Paulk (Bobbie Louise Rowe) *cannot* be used for the payment of debts and taxes. Therefore, funds for these purposes must be obtained from the sale of the remaining stock in H. B. Paulk Grocery Company and we have no *guarantee* that these assets can be disposed of on the market for an amount sufficient to pay all debts claims, expense of administration and taxes. Furthermore, we are now confronted with a true question of abatement. What is the order of abatment as between a *specific* bequest of personalty and a *general devise* of realty? . . . ."

As the quotation from brief indicates, the question posed arises from an issue between appellee Youmans and the legatees of stock in H. B. Paulk Grocery Company other than the widow. The legatees named in Item Seven of the will; namely: Jack Paulk, the four sisters of testator, his dead sister's heirs, Alton Newman, Lewis Steele, and Ethel Granger Paulk; have an interest which is opposed to sale of the stock bequeathed to them. It would be to their advantage for the court to sell the land devised to appellee Youmans instead of the stock bequeathed to the legatees named above in Item Seven of the will.

This question is not presented in the assignments of error. This question is not presented in the controversy between appellee Youmans and appellant Rowe. This question may be presented in the trial court on further consideration of this cause so that the trial court will have the benefit of argument in support of the conflicting claims of the parties interested. Any gratuitous advice which this court might attempt to give would be dicta.

Opinion extended.

Application for rehearing overruled.

All Justices concur.