837 So.2d 847 (2002)
John P. REYNOLDS, Jr.; Virginia Yvonne Reynolds; Peggy R. Watler; and Polly Gilley
v.
Roberta REYNOLDS.
2000622.
Court of Civil Appeals of Alabama.
February 1, 2002.
Certiorari Denied June 14, 2002.
M. Mort Swaim, Foley, for appellants Peggy R. Watler and John P. Reynolds, Jr.
Gregory L. Leatherbury, Jr., Bryan A. Thames, and Christopher M. Gill of Hand *848 Arendall, L.L.C., Foley, for appellant the estate of John P. Reynolds, Sr., deceased.
John Earle Chason of Chason & Chason, P.C., Bay Minette, for appellee.
Alabama Supreme Court 1010954.
PER CURIAM.
John P. Reynolds, Sr., died on November 22, 1999, leaving four childrenJohn P. Reynolds, Jr., Virginia Yvonne Reynolds, Peggy R. Watler, and Polly Ann Gilley (hereinafter collectively referred to as "the children")and a surviving spouse, Roberta Reynolds.
On December 15, 1999, Reynolds's last will and testament was admitted to probate. The will provided, in pertinent part, that after specific bequests and administration expenses and claims had been paid, the remaining estate passed through the residuary portions of the will. The will provided for the creation of a qualified-terminable-interest-property trust ("QTIP trust"), with Roberta as the income beneficiary. The QTIP trust was to be funded with one-half of Reynolds's estate. The other one-half of Reynolds's estate was to be divided among the children. Upon Roberta's death, the remainder of the assets funding the QTIP trust are to be divided among the children.
A QTIP trust is an estate-planning device that defers, rather than forgives, tax. Section 2056(a) of the Internal Revenue Code provides that the estate is allowed an estate-tax deduction for the value of any interest in property that passes or has passed from the decedent to the surviving spouse, commonly known as the marital deduction. For a QTIP trust to qualify for the marital deduction, the surviving spouse must be entitled to the entire income of the trust for life, the income must be paid at least annually, no person can have the power to appoint any part of the property to any person other than to the surviving spouse, and the executor must elect to qualify the property for the estate-tax marital deduction. § 2056(b), I.R.C. The QTIP trust established in Reynolds's will met these requirements, and his executor made an election to qualify Roberta's QTIP trust for the marital deduction.
A QTIP trust is useful in second marriages, as in the instant case, where the testator wants to provide the surviving spouse with an income for life, while paying as little tax as possible so as to maximize the assets available to support the surviving spouse, with the remainder to go to the testator's children from the first marriage upon the surviving spouse's death. The remainder beneficiaries will be assured of receiving the trust property at the death of the surviving spouse rather than having to rely on the surviving spouse to give the property to the remaindermen.
On February 14, 2000, Roberta petitioned for an elective share, pursuant to § 43-8-70(a), Ala.Code 1975. The elective share statute allows a surviving spouse to choose between taking that which is provided in his or her spouse's will or, instead, to elect to take the statutory amount, not to exceed one-third of the deceased's estate. Roberta moved that the case be removed from the probate court to the Circuit Court of Baldwin County, and her motion was granted.
After conducting a hearing, the trial court determined that the value of Reynolds's gross estate, before deducting any specific bequests, administrative expenses, or claims, was $6,564,589. Specific bequests amounted to $240,674. Administrative expenses and claims amounted to $354,920. The trial court refused to deduct estate tax in determining the net value of Reynolds's estate for purposes of computing Roberta's elective share. The court determined that Roberta's elective share was $2,065,703.67, i.e., one-third of *849 Reynolds's net estate. The court determined that the QTIP trust was to be funded with $2,978,755.50, which was one-half of Reynolds's residuary estate (i.e., that portion of the estate remaining after the deduction of certain administrative expenses, claims, and the specific bequests set out in the will). For purposes of valuing the property to be used to satisfy Roberta's elective share, the court also accepted the one-half valuation factor set out in § 43-8-75 in valuing Roberta's present interest in the QTIP trust and valued her interest at $1,489,377.75. The court held that because the present value of the QTIP trust ($1,489,377.75) was less than the elective share ($2,065,703.67), then Roberta should receive the benefits of the QTIP trust plus the amount by which the amount of the elective share exceeded the amount of the QTIP trust. The children appealed. The supreme court transferred the case to this court pursuant to § 12-2-7(6), Ala.Code 1975.
The children argue that the trial court erred in calculating Roberta's elective share by failing to deduct estate taxes from Reynolds's gross estate before calculating the elective share. They also argue that the trial court improperly refused to vary from the rebuttable presumption of "one-half" in § 43-8-75 in valuing Roberta's interest in the QTIP trust.
The parties agree that the exact amount of Roberta's elective share and her interest in the QTIP trust cannot be precisely calculated, because of uncontrollable factors, such as the expenses of the estate and controversies unrelated to this appeal. However, it is the method of determining those amounts that is at issue.
Section 43-8-70 provides:
"(a) If a married person domiciled in this state dies, the surviving spouse has a right of election to take an elective share of the estate. The elective share shall be the lesser of:
"(1) All of the estate of the deceased reduced by the value of the surviving spouse's separate estate; or
"(2) One-third of the estate of the deceased.
"(b) The `separate estate' of the surviving spouse shall include:
"(1) All property which immediately after the death of the decedent is owned by the spouse outright or in fee simple absolute;
"(2) All legal and equitable interests in property the possession or enjoyment of which are acquired only by surviving the decedent; and
"(3) All income and other beneficial interests:
"a. Under a trust;
"b. In proceeds of insurance on the life of the decedent; and
"c. Under any broad-based nondiscriminatory pension, profit-sharing, stock bonus, deferred compensation, disability, death benefit or other such plan established by an employer.
"(c) If a married person not domiciled in this state dies, the right, if any, of the surviving spouse to take an elective share in property in this state is governed by the law of the decedent's domicile at death."
The supreme court held in Brakefield v. Hocutt, 779 So.2d 1165, 1166 (Ala.2000):
"Brakefield argues that in addition to the homestead allowance, exempt property, and family allowance, the circuit court should have deducted the allowable claims against the estate before determining [the widow]'s elective share.... As this Court explained in Barksdale v. Barksdale, 551 So.2d 1006 (Ala.1989), the proper method of calculating *850 the surviving spouse's elective share is to deduct the homestead allowance, exempt property, family allowance, `and allowed claims against the estate' from the decedent's total estate, then divide the remaining amount by three. 551 So.2d at 1008. To hold otherwise would exempt the surviving spouse's elective share from, and give it priority over, the claims of creditors and other allowable claims against the estate, notwithstanding that the statute providing for the elective share, unlike the statutes providing for the homestead allowance [§ 43-8-110], exempt property [§ 43-8-111], and family allowance [§ 43-8-112], does not manifest an intention to do so. See Ala.Code 1975, § 43-8-70(a)."
In Brake-field, the court held that the circuit court had erred in calculating the surviving spouse's elective share, by failing to deduct allowed claims against the estate. The court noted that the Legislature has specifically exempted the homestead allowance, exempt property, and the family allowance from the elective-share calculation. The supreme court held that "allowed claims against the estate"[1] must be subtracted before the elective share is calculated. However, this does not mean that the supreme court intended for a spouse's elective share to be computed after deducting federal estate tax.
The United States Court of Appeals for the Fifth Circuit held that under Alabama law, estate taxes are not a preferred debt of the decedent's estate because they arise only upon the decedent's death and that such taxes do not qualify as debt that should be deducted before the spouse's share on dissent from the will (the precursor to the elective share) is calculated. Cox v. United States, 421 F.2d 576 (5th Cir.1970). The court in Cox stated:
"[Ala.Code 1940 (Recomp.1958), tit. 51, § 449,] has obviously placed Alabama among those states following the general rule that the burden of the estate taxes shall be on the general estate rather than being apportioned among the beneficiaries.
"The government, however, contends that in this case because the wife dissented from the will and took her intestate share she was a residuary legatee and therefore chargeable with her proportionate share of the estate tax. We think this argument is without merit.
"The obvious reason for the general rule of nonapportionment of estate tax burdens is to protect specific legacies from reduction due to estate taxes. Alabama has chosen to follow this rule. Title 51, § 449. Further, under Alabama law the widow's marital share upon dissent from her husband's will is treated with greater protection than specific bequests which lapse if necessary when she elects to take against the will. Merchants' National Bank of Mobile v. Hubbard, 1931, 222 Ala. 518, 133 So. 723, 74 A.L.R. 646. Over a century ago the Alabama Supreme Court expressed its reverence for the widow's rights in Perrine Ex'rs v. Perrine, 1860, 35 Ala. 644:

*851 "`Lord Coke said, that "three things are favored in lawlife, liberty and dower," ... It is not dower itself, however, but the purpose of dower namely, the support of the widow which the law favors. And statutes which have for their design the support of the husband, must be regarded with the same favor, and administered with the same liberality extended to dower; and for the same reason, that the widow is a favorite of the law.' 35 Ala. at 647.
"It is unthinkable that Alabama which protects specific bequests from reduction due to the estate tax would not also protect the more favored marital share of the widow.
"Furthermore, Alabama has provided under Title 16, § 10[, Ala.Code 1940 (Recomp.1958),] that the wife's marital share of personalty descends subject only to the debts and charges against the estate. Title 61, § 218[, Ala.Code 1940 (Recomp.1958),[2]] lists the order and preference of estate debts and specifically includes taxes only to the extent that they were assessed prior to the decedent's death. The federal estate tax liability, as the government admits, arises only upon the decedent's death. It therefore does not qualify under Title 61, § 218 as a debt which is to be paid before the wife's one-third marital share is computed under Title 16, § 10.[[3]] This demonstrates a clear legislative policy on the part of Alabama that the wife's distributive share of her husband's estate should not be burdened with any liability for the federal estate tax."
421 F.2d at 584-85 (emphasis added; footnotes omitted).
Relying on Cox, the Alabama Supreme Court has held that the widow's share of an estate, which qualifies for the marital deduction allowed under federal estate tax law, was not subject to estate taxes. Moss v. Horton, 544 So.2d 898 (Ala.1989). In Moss, the decedent died intestate. The issue was whether the widow's share and the children's share should be charged equally with the federal and state estate taxes or whether the sums were to be charged solely to the shares of the children. The supreme court held that "consistent with Alabama statutes and with a long line of state and federal cases," the widow's share of the estate shall not be burdened with estate taxes. Moss, 544 So.2d at 899. The court held that this is the case whether the decedent died testate or intestate. The court noted that the estate was able to benefit from the full marital deduction allowed under the federal estate tax law and that that share was not subject to estate taxes. We find Moss persuasive.
Roberta's elective share qualifies for the unlimited marital deduction under 26 U.S.C. § 2056(a). The estate will receive a benefit from the reduction of the size of the taxable estate by the amount of the marital deduction. The elective share generates no estate tax liability and, therefore, should not be burdened by computation of that tax.
The children also argue that the trial court erred in holding that they failed to rebut the presumption of § 43-8-75that the valuation of the surviving spouse's interest in the QTIP trust is one-half the value of all of the QTIP trust assets. They presented evidence indicating that the most appropriate method to value the *852 QTIP trust in this case was to use the mortality tables set forth in the United States Treasury Regulations, § 20.2031-7(d)(7), and the discount rate[4] promulgated pursuant to 26 U.S.C. § 7520.
When Congress adopted the Economic Recovery Tax Act of 1981 ("ERTA"), it substantially changed estate planning with regard to the marital deduction. Before ERTA, to qualify for a marital deduction, the spouse had to give the surviving spouse, at a minimum, not only an income interest for life in the trust but also a general power of appointment. This meant that the surviving spouse could dispose of the trust assets during his or her lifetime without regard for the remaindermen. Also under pre-ERTA law, the amount of the marital deduction could not exceed half of the spouse's net estate.
Beginning in 1982, a spouse could, for the first time, create a trust for the exclusive benefit of the surviving spouse, without providing any general power of appointment to the surviving spouse. This is the QTIP trust, which allows the testator/spouse to control the remainder interest in the property upon termination of the surviving spouse's life interest, i.e., the surviving spouse does not have a general power of appointment. ERTA also eliminated the limit on the amount of the marital deduction.
In 1982, the Alabama Legislature adopted § 43-8-75, which provides:
"(a) In the proceeding for an elective share, values included in the estate which pass or have passed to the surviving spouse, or which would have passed to the surviving spouse but were renounced, are applied first to satisfy the elective share and to reduce any contributions due from other recipients of transfers included in the estate. For purposes of this subsection, the electing spouse's beneficial interest in any life estate or in any trust shall be computed as if worth one-half of the total value of the property subject to the life estate, or of the trust estate, unless higher or lower values for those interests are established by proof; provided, however, that, to the extent that the electing spouse's beneficial interest is a life estate or is an interest in a trust and is coupled with a general power of appointment (whether exercisable by deed or by will or by either), the beneficial interest shall be computed as being equal to two-thirds of the total value of the property subject to the life estate, or of the trust estate, with respect to which the general power of appointment exists.
"(b) Remaining property of the estate is so applied that liability for the balance of the elective share of the surviving spouse is equitably apportioned among the recipients of the estate in proportion to the value of their interests therein."
(Emphasis added.)
The Commentary to § 43-8-75 states, "The second sentence of subsection (a) provides a rebuttable presumption of the value of a life estate or an interest in a trust, when this form of benefit is provided for an electing spouse by the decedent's plan." The issue in this case is whether the children rebutted the presumption that Roberta's interest in the QTIP trust created by Reynolds's will should be valued at one-half. What § 43-8-75 envisions is that there must be a comparison between the elective share and an estimate of how much income the spouse may receive under the provisions of the will. The value of Roberta's interest in the QTIP trust is important in determining the funding of her elective share. If her interest is worth *853 more than her elective share, then Roberta would be entitled to the QTIP trust and no more. However, if it is worth less, then Roberta would be entitled to the QTIP trust plus additional property from the estate to make up the difference.
The children argue that there is no precise method for valuing a life interest in a QTIP trust. When attempting to value a future stream of income, no valuation method can be precise, because no one can predict the future. However, they argue that using the mortality tables and the discount rate is more appropriate than arbitrarily valuing the trust at one-half the current value of its assets. They contend that under the mortality tables, Roberta, who is 66 years old, has a life expectancy of 18.4 years. They further contend that the discount rate of 7.4% applies, and that Roberta's interest should be valued at $1,884,811.
At the hearing, Xavier Hartmann, a coexecutor of the estate, who is also an accountant, testified that Roberta's interest in the QTIP trust should be valued by using the mortality tables and the discount rate provided in 26 U.S.C. § 7520. He stated that applying those methods rather than the one-half value would be fair to Roberta and to the children. Hartmann testified that using the one-half value provided for by § 43-8-75 would not be the most accurate way to value Roberta's interest. He stated that in order for Roberta to have a one-half interest in her life estate, she would have had to be between 74 and 75 years old when the will was probated. He further stated that it makes economic sense to consider the age of the individual in valuing a life estate, rather than using an arbitrary figure.
Hartmann testified that the discount rate from 26 U.S.C. § 7520 is commonly used by accountants in valuing annuities, life estates, and life interests. He stated that the discount rate is a figure published monthly by the Federal Government and that it fluctuates close to the prime interest rate. Hartmann testified that he used the discount rate applicable on the date of Reynolds's death.
Steven Slaughter, a certified public accountant, testified that in valuing the life interest, for purposes of determining the value of Roberta's interest in the QTIP trust, he would use the one-half method set out in § 43-8-75. On cross-examination, he stated that generally, to estimate the present value of an income stream, he would use the factors of life expectancy, the amount of the principal, and the interest rate. However, he stated that a one-half value should be used, because of the statute. He further stated that the life-expectancy table and the interest rate used by the executor were arbitrary. However, he admitted that the one-half valuation set out in the statute was also arbitrary and did not reflect the economic reality of the value of the trust.
Malcolm Macphee, a pension-plan administrator, testified that if he were trying to determine Roberta's present value in the income stream in the trust, he would set up a mortality table. He stated that he would not use the "generic" mortality table used by the executor, but instead would use a mortality table that took into consideration the person's occupation. For example, a professional would have a lower mortality rate than someone in a high-risk occupation. Macphee testified that he would use a lower interest rate than that used by the executor. He also testified that he would factor in a number for inflation.
We cannot say the trial court abused its discretion in applying the one-half presumption of § 43-8-75. The trial court determined that the children failed to rebut the presumption. Although both *854 Hartmann and Macphee opined that they would use mortality tables and a discount rate, their opinions conflicted on which tables and rates to use. Particularly considering the conflicting evidence regarding the accuracy of the valuation method used for federal estate tax purposes, as advocated by the children, the trial court could have concluded that the children failed to establish a higher value for Roberta's interest as required by § 43-8-75.
We note that because of the speculative nature of predicting the future, parties are likely to present differing evidence regarding the value of a trust interest or life interest in property. Tables developed by the Internal Revenue Service and used by accountants in establishing the values for annuities, life estates, and life interests are commonly accepted and used by professionals in the financial community. The three witnesses who testified regarding valuation of the trust acknowledged the use of published interest rates and actuarial tables in their professions for valuing life interest in property. Those witnesses admitted that the value determined by using the federal government's published interest rates and actuarial tables is somewhat speculative. They also acknowledged that the 50% value established in § 43-8-75 is also speculative. The object is to choose a method of valuation that most fairly represents the actual value of a spouse's interest. The use of published interest rates, the Internal Revenue Service's annuity tables, and other means of approximating valuations may not result in a flawless establishment of the value of an interest, but in most situations those means of valuation may come closer to establishing that value than the use of the general percentage set forth in § 43-8-75.
Although we believe in most cases that determining the value of an interest in property through methods other than the 50% valuation method set forth in § 43-8-75, is likely to provide a better way of establishing the value of a spouse's interest in a life estate or trust that is not subject to a power of appointment, in light of the evidence before the trial court, we accept the trial court's decision to apply the one-half presumption of § 43-8-75 in valuing Roberta's interest in the QTIP trust in the present case.
AFFIRMED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs specially.
CRAWLEY, J., concurs in the result.
MURDOCK, Judge, concurring specially.
I concur in the majority opinion and write separately to make several additional observations regarding the children's various arguments for the deduction of estate taxes from the estate before calculation of the surviving spouse's elective share.
The children essentially contend that Brakefield v. Hocutt, 779 So.2d 1165 (Ala. 2000), stands for the propositions that (i) all claims and administrative expenses must be subtracted from the estate before the elective share is calculated and that (ii) federal and state estate taxes are to be included in these categories of deductions. In Brakefield, however, the Alabama Supreme Court merely adhered to precedent that requires a probate court to deduct "allowed claims" against the estate before calculating the elective share. 779 So.2d at 1166 (citing Barksdale v. Barksdale, 551 So.2d 1006 (Ala.1989)). Neither Brakefield nor Barksdale provide any meaningful guidance as to what constitutes an "allowed *855 claim" against an estate.[5]
The children also argue that, "[i]f our legislators had wanted to provide special protection for the elective share, they knew how to do so." To make this argument, the children point to language such as that found in Alabama Code 1975, § 43-8-110, which states that the "homestead allowance is exempt from and has priority over all claims against the estate." (Emphasis added.) See also Ala.Code 1975, § 43-8-111 and -112 (containing similar language as to the "exempt property allowance" and the "family allowance," respectively). The children's reliance on such language is misplaced.
Though state law does determine which property is used first to pay federal estate taxes (see Cox v. United States, 421 F.2d 576 (5th Cir.1970)), the manner of calculating the federal estate tax, and whether the personal allowances described in §§ 43-8-110, -111, and -112, or the elective share, are completely exempt from the payment of the federal estate-tax claim, are questions of federal law. I therefore do not believe that the Alabama legislature intended that "claims," as that term is used in §§ 43-8-110, -111, and -112, was to include federal estate taxes. Thus, the children's attempted juxtaposition of the presence of this language in these personal-allowance statutes and the absence of such language in Alabama's elective-share statute is unavailing.
The Alabama Supreme Court repeatedly has cited with approval the opinion of the United States Court of Appeals for the Fifth Circuit in Cox v. United States, 421 F.2d 576 (5th Cir.1970), discussed in the majority opinion. See Cleveland v. Compass Bank, 652 So.2d 1134 (Ala.1994); Moss, supra; Byars v. Mixon, 292 Ala. 657, 299 So.2d 259 (1974); and Davis v. Davis, 289 Ala. 313, 267 So.2d 158 (1972). In doing so, that court has not distinguished between the issue of where estate *856 taxes fall in the elective-share calculation and the issue of who will pay the taxes. Nor, as discussed below, do reported cases suggest such a distinction in regard to the calculation of a spouse's share of an intestate estate. This undoubtedly is because the size of the elective share is mathematically the same regardless of whether estate taxes are deducted before the one-third calculation is made or the one-third calculation is made first, followed by a "charging" of the elective share with its proportionate share of estate taxes. See Douglas A. Kahn, The Federal Estate Tax Burden Borne By A Dissenting Widow, 64 Mich. L.Rev. 1499 (1966).
The Alabama Supreme Court in Moss v. Horton articulated well-established principles of Alabama law:
"[Section 40-15-18] directs that the incidence of the burden of federal estate tax shall fall upon the residue of the estate and that the marital deduction shall not be burdened with any part of the estate tax. It is the rule that the burden of payment of estate taxes will fall upon the residue so that the estate will be able to take advantage of the maximum marital deduction."

544 So.2d at 900 (emphasis added; some citations omitted).
It is clear that property qualifying for the marital deduction shall be the last to bear the burden of any estate-tax payment, unless the decedent's will specifically provides otherwise. See Moss; Elliott v. Elliott, 349 So.2d 1092 (Ala.1977); Byars v. Mixon, 292 Ala. 657, 299 So.2d 259 (1974); Davis, supra; and Rowe v. Newman, 290 Ala. 289, 276 So.2d 412 (1972). See also Cox, supra; Snodgrass v. United States, 308 F.Supp. 440 (N.D.Ala.1968), aff'd, 427 F.2d 150 (5th Cir.1970); and Robertson v. United States, 281 F.Supp. 955 (N.D.Ala.1968). If estate taxes are deducted before calculating the spouse's elective share, then the diminution of the surviving spouse's share will be the same at that point as if the spouse had paid a proportionate share of the estate taxes. This would accomplish indirectly what may not be done directly.[6]
Section 43-8-70, Ala.Code 1975, defines the spouse's elective share simply as "one-third of the estate of the deceased." (Emphasis added.) Section 43-8-70 is part of Alabama's Probate Code (see Ala.Code 1975, §§ 43-8-1 et seq.) and "the estate" referenced therein by Alabama's legislature finds its meaning in state law, including the concept of the "probate estate." See Russell v. Russell, 758 So.2d 533 (Ala. 1999); Ala.Code 1975, § 43-1-1(8) (defining "estate" for purposes of the Probate *857 Code as "the property of the decedent whose affairs are subject to this chapter").[7] The children argue, however, that "the estate" referenced in § 43-8-70 is one that is determined only after the deduction of estate taxes, which are a function of a federally prescribed "taxable estate" that includes both probate and non-probate property. If this court were to adopt the children's position, we would be merging concepts from federal and state law that were not meant to be merged.
Indeed, because the federal taxable estate is comprised of both probate and nonprobate transfers, the taxable estate can be, and in many instances will be, much larger than the probate estate. Because federal estate-tax rates are so substantial, ranging up to 55% of the taxable estate, the amount of estate taxes generated from a taxable estate that includes both probate and nonprobate transfers could easily be larger than the amount of the probate estate itself, and thereby could reduce the elective share to zero. Ironically, this result could occur even though the assets that otherwise would be transferred to the surviving spouse would, themselves, create no estate taxes, and even though one of the principal reasons that such assets are transferred to a surviving spouse is to prevent the taxation of those assets at the death of the decedent. See 26 U.S.C. § 2056.
From a federal estate-tax law standpoint, the very purpose of the marital deduction is to allow a decedent to reduce estate taxes for the benefit of the decedent's heirs. This is accomplished by providing for the deduction of amounts passing to a surviving spouse, including an elective share, before the calculation of estate taxes. See id. Deducting estate taxes before determining the share passing to the spouse would increase estate taxes to the detriment of the decedent's heirs. It would turn the purpose served by the longstanding provision for a marital deduction, and estate planning based thereon, on its head.
NOTES
[1] As noted above, the Brakefield court cites Barksdale v. Barksdale, 551 So.2d 1006 (Ala. 1989). In Barksdale, the court held that the proper method for calculating the widow's elective share of the deceased's total estate was one-third of the total value of the estate, less exemptions for homestead, exempt property, family allowances, and allowed claims against the estate. Then, to that amount were added the widow's exemptions, plus interest earned on money to which she was entitled, minus the widow's share of expenses of administration of the estate and other estate indebtedness for insurance and "taxes." The opinion does not specify what the "taxes" were, but, the taxes ($237.41) were not deducted before the elective share was calculated.
[2] This provision is now found at § 43-2-371.
[3] Title 16, § 10, has been replaced by § 43-8-41, which defines the intestate share of the surviving spouse.
[4] The discount rate is the interest rate used to determine present values.
[5] The Alabama Supreme Court in Barksdale actually placed the "taxes" under consideration in that case in the category of "other indebtedness," which was not deducted from the estate before calculation of the elective share. 551 So.2d at 1008. Still, the Barksdale opinion does not reveal the nature of the "taxes" at issue in that case.

In other contexts, however, involving both testate and intestate estates, the Alabama Supreme Court has indicated that estate taxes are not in the same classification as other claims, and also are not classified as debts and expenses of administration. See, e.g., Moss v. Horton, 544 So.2d 898 (Ala. 1989) (affirming trial-court judgment that deducted certain charges and administrative expenses from spouse's intestate share, but excluded estate taxes); and Rowe v. Newman, 290 Ala. 289, 276 So.2d 412 (1972) (for purposes of payment, treating debts, claims, and expenses of administration in a different category than estate taxes in the context of a will).
At least two Probate Code provisions use similar terminology in a way that suggests that "allowed claims" would not include estate taxes. Alabama's "nonclaims statute" provides that "[a]ll claims against the estate of a decedent ... must be presented within six months after the grant of letters ... and if not presented within that time, they are forever barred and the payment or allowance thereof is prohibited." Ala.Code 1975, § 43-2-350(b) (emphasis added). Section 43-2-60, Ala.Code 1975, states that "[t]he personal representative must give notice ... [to] all persons having claims against the estate to present the same within the time allowed by law." (Emphasis added.) Thus, in the context of "allowance," Alabama's nonclaims statute utilizes the word "claims" to refer to matters that must be presented to the personal representative within the nonclaims period. Federal and state estate taxes do not fall in this category. Estate tax returns are not even due until nine months after a decedent's death. 26 U.S.C. § 6075.
It may also be noted that, except where applicable state statutes expressly require otherwise, the courts in most states have held that estate taxes are not to be deducted from the estate before calculation of elective shares. See In re Estate of Shapiro, 380 N.W.2d 796, 801 n. 1 (Minn.1986).
[6] In addition, Moss highlights the inconsistency in the treatment of testate estates and intestate estates that would result from deducting estate taxes before calculating the spouse's elective share. As with the elective-share statute relating to testate estates, the intestacy statute does not contain any language expressly providing that the spouse's share is exempt from claims against the estate. See Ala.Code 1975, § 43-8-41. The dispute in Moss arose because the spouse's intestate share had been calculated based upon the entire estate (minus an administrative expense) and then deducted before calculation of estate taxes. In making these calculations in this order, "[t]he trial court correctly held that the estate properly took advantage of the maximum marital deduction allowed under the Federal estate tax law." 544 So.2d at 899. If the approach advocated by the children in the present case were to be followed, however, testate estates will be reduced by estate taxes before elective shares are calculated. There is no basis in the text of our statutes, nor any rationale in our caselaw or any policy reason, for such a different result for testate and intestate estates. The elective share is no less intended for the protection of the surviving spouse than is the spouse's intestate share.
[7] In Russell v. Russell, 758 So.2d 533 (Ala. 1999), the Alabama Supreme Court confirmed that "the estate," for purposes of calculating the elective share, is indeed based upon the decedent's estate under Alabama's Probate Code (i.e., the "probate estate"), and does not include nonprobate property such as lifetime transfers. In light of this rejection by Alabama of the concept of an "augmented estate" for probate purposes, it is important to note that the essential difference in the Alabama "probate estate" and the federal-estate tax "taxable estate" is that the taxable estate, like the augmented estate under the Uniform Probate Code, includes certain lifetime transfers and other nonprobate property.