The issue presented by these appeals is whether the trial court erred in determining that the nonademption policy of §43-8-227(a)(1), Ala. Code 1975, applied and that, therefore, Era Robertson was entitled at Silas Downey's death to the proceeds due from the sale of real property devised to Robertson but sold before Downey died.
 I. History
Downey executed a three-page will on April 1, 1988. His wife had died before he executed the will. Article Two of Downey's will made the following bequest to Robertson, his wife's sister:
 "[A]ll right, title, and interest I may have in and to any real estate at the time of my death, including all right, title, and interest in and to real estate which I derived by inheritance or otherwise from or through my late wife, Gladys Wilene Pritchett Downey, with such real estate to vest in the said Era Robertson absolutely."
In Article Six, Downey devised the residue of his estate to his sister, Pearl Thrasher. He named Robertson as executor of his will.
On February 22, 1991, Downey conveyed part of the real estate he had inherited from his late wife to Lowell Sherman and his wife, Kathryn Sherman, and financed the sum of $18,300. This indebtedness was secured by a mortgage on the real estate.
Downey died on October 15, 1994. Cary Bolte, Downey's niece, filed an application for letters of administration in the Jackson County Probate Court on April 27, 1995; it was granted that same day. On May 26, 1995, Robertson petitioned the probate court to admit Silas Downey's will to probate, to set aside Bolte's appointment as administrator, and to appoint Robertson as executor. The probate court granted Robertson's petition on July 25, 1995. Pearl Thrasher died on October 15, 1999. On October 2, 2003, without a hearing, the probate court signed an order holding that the remaining mortgage debt of $7,000 was part of the residuary estate that had been bequeathed to Pearl Thrasher, in which her heirs now shared. *Page 922 
On August 19, 2004, Pearl Thrasher's heirs — Cary Bolte, Julian Thrasher, and William Thrasher — filed an action in the Jackson Circuit Court (case no. CV-04-266) to collect the moneys received by Robertson on the mortgage debt after she was appointed executor on July 25, 1995. Robertson then filed a motion in the probate court on September 3, 2004, to vacate the probate court's October 2, 2003, order. After a hearing on September 24, 2004, the probate court vacated the order, and the will contest involving the estate of Silas Downey was removed to the circuit court (case no. CV-04-298). On October 6, 2004, the heirs moved to consolidate case no. CV-04-266 and case no. CV-04-298, and on October 14, 2004, the circuit court consolidated the actions and set the consolidated case for hearing.
On January 5, 2005, the parties presented the issues to the circuit court by stipulated facts, one of which was that Robertson had received $7,000, representing the amount of the outstanding mortgage balance as of July 25, 1995. No testimony was taken. On January 28, 2005, the circuit court held that the statutory policy of nonademption applied and that the proceeds from the real estate devised to Robertson and sold after Downey's will had been executed belonged to Robertson.
The heirs appealed. They argue that an ademption occurred because, they say, the devise of real estate to Robertson was a general, not a specific, devise and, therefore, the debt paid by the buyers after Downey's death was part of the residuary estate and hence the personal property of the heirs.
 II. Standard of Review
Under both statutory and case-law, when evidence was not taken orally by the trial judge, this Court's standard of review is to weigh and consider the evidence de novo. Section12-2-7(1), Ala. Code 1975, provides:
 "[N]o weight shall be given the decision of the trial judge upon the facts where the evidence is not taken orally before the judge, but in such cases the Supreme Court shall weigh the evidence and give judgment as it deems just."
Similarly, Murphree v. Smith, 291 Ala. 20,277 So.2d 327 (1973), states:
 "[W]here the cause was submitted to the trial court for a final [judgment] on the pleadings and testimony of the witnesses taken orally before the Register, it is our duty to weigh and consider the evidence de novo and arrive at a conclusion without the aid of any presumption in favor of the trial court's findings of fact."
291 Ala. at 23, 277 So.2d at 328-29.
 III. Analysis
The basic issue presented by these appeals is simply whether the devise to Robertson was general or specific. If it was a general devise, the trial court's judgment should be reversed and the cause remanded with directions to render a judgment in the amount of $7,000 in favor of the heirs. If it was a specific devise, the trial court's judgment should be affirmed under § 43-8-227(a)(1), Ala. Code 1975, which provides:
 "(a) A specific devisee has the right to the remaining specifically devised property and:
 "(1) Any balance of the purchase price (together with any security interest) owing from a purchaser to the testator at death by reason of sale of the property. . . ."
This statute deals with a number of different circumstances and prevents ademption in all cases of specifically devised assets when the testator's death occurred before the proceeds of the sale, condemnation, or any insurance were paid to the testator. *Page 923 
A. Was the devise to Era Robertson a general devise?
The heirs contend that the devise to Robertson in Article Two was a general, not a specific, devise. However, even under the common law the devise would be a specific devise. This Court has held:
 "Under the common law, all devises of real estate owned by the testator on the date of the execution of the will were specific devises, and this rule is not modified by the statute, except as to real estate disposed of by residuary devise and real estate acquired by the testator after the execution of the will."
Cater v. Howard, 230 Ala. 133, 138, 159 So. 830, 834
(1935) (citing Kelly v. Richardson, 100 Ala. 584,13 So. 785 (1893)).
To support their argument, the heirs merely quote the definitions of "general devise" and "specific devise" found in the fifth edition of Black's Law Dictionary 407 (5th ed.1979), stating:
 "`A general devise is one which passes lands of the testator without a particular enumeration or description of them; as, a devise of "all my lands" or "all my other lands." . . .
 "`Specific devises are devises of lands particularly specified in the terms of the devise, as opposed to general . . . devises of land, in which the local or other particular descriptions are not expressed.'"
(Heirs' brief at 8.) Yet, the subject property fits the very definition of a specific devise: it is "particularly specified" in Article Two of Downey's will as the "real estate which [Downey] derived by inheritance or otherwise from or through [his] late wife, Gladys Wilene Pritchett Downey. . . ."
Furthermore, the bequest to Robertson meets the definition of a specific bequest:
 "`A specific bequest is defined as "a bequest of a particular article or specific part of the testator's estate which is so described and distinguished from all other articles or parts of the same as to be capable of being identified."'"
Parker v. Bozian, 859 So.2d 427, 435
(Ala. 2003) (quoting Matthews v. Matthews, All So.2d 391, 393 (Ala. 1985), quoting in turn Rowe v. Newman,290 Ala. 289, 300, 276 So.2d 412, 421 (1972), and citingUllmann v. First Nat'l Bank of Mobile, 273 Ala. 154,137 So.2d 765 (1961)). In this case, the subject property is described and distinguished from Downey's other real property and is clearly identified as the real property inherited from his late wife, Robertson's sister. Thus, it can be separated from the rest of Downey's real estate and is therefore a specific devise. See 80 Am.Jur.2d Wills § 1302 (2005).
B. Does this case present an issue of first impression?
The heirs cite no case authority, contending that this case presents an issue of first impression because the cases cited in the annotations to § 43-8-227 were all decided before the enactment of that Code section in 1982. However, the editor's note to the annotation states: "In light of the similarity of the subject matter, decisions under former § 43-1-10 are included in the annotations for this section."
Furthermore, the Commentary following § 43-8-227 states:
 "Prior Alabama law can be said to be in accord with the general policy stated in this section. Former § 43-1-10 provided that `when any testator, after making his will, makes any contract for the conveyance of any property devised in such will, and the whole or any part of the purchase money remains unpaid to such testator at his death, the disposition of the property by such contract is *Page 924 
not a revocation of the devise, . . . unless it clearly appears by the contract, or some other instrument in writing to be intended as a revocation. . . .' However, this section specifically mentions additional situations. Alabama did not previously have any statement of law specifically covering the situation mentioned in subsection (b) of this section."
Subsection (b) does not apply to this case; it refers to sales by, or proceeds paid to, a guardian or curator. In other words, the enactment of § 43-8-227 has not abrogated the judicial precedent that applies to the heirs' case.
The heirs attempt to distinguish § 43-8-227 from the former § 43-1-10 by stating:
 "There is a significant difference between the two sections in that Section 43-1-10 does not use either the term `general devise' or `specific devise,' whereas Section 43-8-227(a) uses the words `specific devisee' and `specifically devised' in the first eleven words of the statute."
(Heirs' brief at 8.)
However, the Commentary to § 43-8-227 again refutes the heirs' argument that the addition of these words expressed an intent by the legislature to change the law as it existed before the enactment of § 43-8-227:
 "The intent of this section is to prevent ademption in all cases involving sale, condemnation or destruction of specifically devised assets where testator's death occurred before the proceeds of the sale, condemnation or any insurance, had been paid to the testator."
In other words, the intent of § 43-8-227 remained the same as the intent of former § 43-1-10. A devisee remained entitled to the proceeds due on specifically devised land sold subsequent to the execution of the will devising the land when those proceeds have not been paid to the testator before the testator's death. Furthermore, the predecessor statute to § 43-1-10, Title 61, § 13, Ala. Code 1940, its predecessor, § 10588 (6163), Ala. Code 1923, and all the predecessor statutes on nonademption expressed this same intent.
This Court has explained that under former § 43-1-10 and its predecessors:
 "For the purposes of the will, the statute treats the unpaid purchase money as real estate. It may be said the statute is written into every devise of lands situate in Alabama, as if to say, on the face of the will, T devise this land or any unpaid purchase money due me thereon at my death, to the persons named in the will'"
Phillips v. Phillips, 213 Ala. 27, 28, 104 So. 234, 236
(1925). Thus, the conveyance by any contract of property devised by a will does not revoke the devise of the property in the testator's will, but passes the unpaid purchase money to the devisee.
This clearly is not a case of first impression. The enactment of § 43-8-227 merely incorporated the former § 43-1-10. The decisions under the predecessor statutes to former § 43-1-10 and under former § 43-1-10 are still good law and still apply to this case.
C. What was Downey's intent?
Generally, wills should be construed to uphold rather than defeat devises, but the primary rule is to find and give effect to the intent and purpose of the testator. See Parker v.Bozian, supra; Rowe v. Newman, 290 Ala. 289,276 So.2d 412 (1972) (citing Pearce v. Pearce,199 Ala. 491, 74 So. 952 (1917); Willis v. Barrow, 218 Ala. 549,119 So. 678 (1929); and Ullmann v. First Nat'l Bank ofMobile, 273 Ala. 154, 137 So.2d 765 (1961)). *Page 925 
In this case, there is no evidence, written or oral, indicating that Downey intended that Robertson should not receive the unpaid purchase money for the real estate specifically devised to her by his will. According to Phillips v. Phillips, "[t]he statute declares the unpaid purchase money shall not be taken out of the operation of the devise unless such intent is clearly expressed by an instrument in writing."213 Ala. at 29 104 So. at 236 (citing Slaughter v. Stephens,81 Ala. 418, 2 So. 145 (1887)).
Downey's will clearly shows that he intended that Robertson receive any real property that he owned at the time of his death, including that real property inherited from his late wife, Robertson's sister. There is nothing to indicate that he did not want Robertson to receive any unpaid purchase money resulting from the sale of that real property.
D. Does a remaining balance on a note secured by a mortgage constitute "right, title, and interest" to real estate devised by a will but subsequently sold?
Neither the heirs' nor Robertson's briefs explored whether the phrase "all right, title, and interest I may have in and to any real estate at the time of my death. . . ." in Article Two of Downey's will limited his bequest to Robertson. One might argue that § 43-8--227(a)(1) applies only to an unqualified bequest. For example, if Downey's will had simply devised "all right, title, and interest I may have in any real estate," §43-8-227 would dictate that Robertson would be entitled to at least a portion of the proceeds from any property that had been sold, but as to which all proceeds had not been received, before Downey's death. But Downey qualified that bequest in his will, limiting the bequest to the right, title, and interest he had in any real estate "at the time of [his] death." Therefore, it could be argued, he excluded from the specific bequest any property in which he did not have any right, title, or interest at the time of his death. The relevant question, therefore, is whether at the time of his death Downey had any remaining "right, title, and interest" in the property sold to the Shermans.
The Shermans purchased the property from Downey, but they executed to Downey a note secured by a mortgage on the property, and at the time of Downey's death the Shermans owed a balance on the indebtedness secured by the mortgage. The question, then, is whether that mortgage and the remaining indebtedness constitute "right, title, and interest" in the subject property. The answer in Alabama is that it does.
This Court generally defined the property interests created by a mortgage in Trauner v. Lowrey, 369 So.2d 531,534 (Ala. 1979), stating: "Alabama classifies itself as a `title' state with regard to mortgages. Execution of a mortgage passes legal title to the mortgagee." See Foster v.Hudson, 437 So.2d 528 (Ala. 1983); First Nat'l Bank ofMobile v. Gilbert Imported Hardwoods, Inc., 398 So.2d 258
(Ala. 1981); Jones v. Butler, 286 Ala. 69,237 So.2d 460 (1970); McCary v. Crumpton, 267 Ala. 484,103 So.2d 714 (1958); Garst v. Johnson, 251 Ala. 291,37 So.2d 183 (1948); and Mallory v. Agee, 226 Ala. 596,147 So. 881 (1932). See also § 35-10-26, Ala. Code 1975.
Downey was the mortgagee; he took the mortgage that conveyed title to him, pending payment of the loan secured by the mortgage. Because the loan was not paid in full at the time of Downey's death, he still had some right, legal title, and interest in the subject property. According to §43-8-227(a)(1), Ala. Code 1975, that *Page 926 
right, legal title, and interest was included in his bequest to Robertson.
 IV. Conclusion
The judgment of the circuit court is affirmed. The devise to Robertson was a specific and not a general devise. Therefore, the nonademption provisions of § 43-8-227, Ala. Code 1975, control, and Robertson is entitled to receive the $7,000 due from the sale of the land that was devised to her but sold before Downey's death.
AFFIRMED.
NABERS, C.J., and LYONS, WOODALL, and SMITH, JJ., concur in the result.